Electronically Filed
10/12/2023 3:33 PM
Steven D. Grierson
CLERK OF THE COURT

1

**MAAL**
JOHN F. BEMIS, ESQ.

2  Nevada Bar No. 009509
ATKINSON WATKINS & HOFFMANN, LLP

3  10789 W. Twain Ave., Suite 100
Las Vegas, NV  89135

4  Telephone: 702-562-6000
Facsimile: 702-562-6066

5  Email: jbemis@awhlawyers.com

6  CHRISTOPHER D. BURK, ESQ.
Nevada Bar No. 8976

7  BURK INJURY LAWYERS
2350 West Charleston Blvd., Suite 202

8  Las Vegas, NV 89102
Telephone: 702-901-0889

9  Facsimile: 702-623-5113
Email: chris@bettercallburk.com

10  *Attorneys for Plaintiff*

11

**DISTRICT COURT**

12

**CLARK COUNTY, NEVADA**

13

14  JESSE CASTILLO, an individual,

15                    Plaintiff,

16  v.

17  CHARLES SHIN LIN, MD, individually;
RAZMIG GARO KRATLIAN, MD,

18  individually; ABRILL M. JONES, MD,
individually; JAMES S. FORAGE, MD,

19  individually; INPATIENT CONSULTANTS
OF NEVADA, INC.; FREMONT

20  EMERGENCY SERVICES, LTD.; SUNRISE
HOSPITAL AND MEDICAL CENTER, LLC

21  d/b/a SUNRISE HOSPITAL AND MEDICAL
CENTER; DUKE FORAGE ANSON

22  NEUROSURGICAL, LLP; and DOES I through
X, inclusive; and ROE CORPORATIONS I

23  through X, inclusive,

24                    Defendants.

25  . . .

26  . . .

27  . . .

28

CASE NO.:   A-20-820371-C
DEPT. NO.:  IX

**MOTION TO ADJUDICATE
ATTORNEYS' LIEN ON AN ORDER
SHORTENING TIME**

**(HEARING REQUESTED)**

EXHIBIT A

## MOTION TO ADJUDICATE ATTORNEYS' LIEN ON AN ORDER SHORTENING TIME

Atkinson Watkins & Hoffmann, LLP in conjunction with Burk Injury Lawyers ("Patriot Law Firm") represented Plaintiff in his general and professional negligence claims against former Defendants in this underlying matter.  The matter has fully resolved.  However, this Motion is brought to adjudicate Plaintiff's counsels' statutory right to enforce our lien, and an order for attorneys' fees and costs in accordance with our written contract with Plaintiff, Jesse Castillo.

This Motion is made based upon the papers and pleadings on file herein, the following Points and Authorities and Declaration of counsel of record.

DATED this __12th__ day of October, 2023.

ATKINSON WATKINS & HOFFMANN, LLP


*/s/ John F. Bemis, Esq.*
JOHN F. BEMIS, ESQ.
Nevada Bar No. 9509
10789 W. Twain Avenue, Suite 100
Las Vegas, NV 89135

CHRISTOPHER D. BURK, ESQ.
Nevada Bar No. 8976
BURK INJURY LAWYERS
2350 W. Charleston Blvd., Ste. 202
Las Vegas, NV 89102
*Attorneys for Plaintiff*

**ORDER SHORTENING TIME**

Upon the Declaration of counsel and good cause appearing, therefore:

IT IS HEREBY ORDERED that the time for the hearing of the MOTION TO ADJUDICATE ATTORNEYS' LIEN ON AN ORDER SHORTENING TIME is shortened, and the same be set for hearing on _____ day of _____, 2021, at _____ PM/AM, or as soon thereafter as counsel can be heard.

DATED this ___ day of October, 2023.

_____
DISTRICT COURT JUDGE

Respectfully submitted this __12th_ day of October, 2023, by:

ATKINSON WATKINS & HOFFMANN, LLP

_/s/ John F. Bemis, Esq._____
JOHN F. BEMIS, ESQ.
Nevada Bar No. 9509
10789 W. Twain Ave., Suite 100
Las Vegas, NV 89135
*Attorneys for Plaintiff*

- 3 -

### DECLARATION OF JOHN F. BEMIS, ESQ. IN SUPPORT OF MOTION TO ADJUDICATE ATTORNEYS' LIEN ON AN ORDER SHORTENING TIME

STATE OF NEVADA      )
                                          ) ss.:
COUNTY OF CLARK    )

I, JOHN F. BEMIS, ESQ., being first duly sworn deposes and says:

1.      I am an attorney at the law firm of Atkinson Watkins & Hoffmann, LLP, Petitioner in this matter. I have personal knowledge of, and am competent to testify to, the facts contained in this declaration, except on those matters stated upon information and belief, and as to those matters, I believe them to be true.

2.      I make this declaration in support of this Motion to Adjudicate Attorneys' Lien ("Motion") and for an Order Shortening Time for the instant Motion to File Under Seal.

3.      Per NRS 18.015(6), "[o] n motion filed by an attorney having a lien under this section, the attorney's client or any party who has been served with notice of the lien, the court shall, after 5 days' notice to all interested parties, adjudicate the rights of the attorney, client or other parties and enforce the lien."

4.      Petitioner requests this matter be set for hearing five (5) days after the Court seals the contents of this Motion, per the Ex-Parte Motion for Leave to File Under Seal, filed concurrently herewith.

5.      Based upon the circumstances of the Motion to Adjudicate Attorneys Lien, I believe there is good cause to enter an Order Shortening Time so that this Court can hear the Motion to Adjudicate in the timeframe prescribed by NRS 18.015.

6.      This Motion is made in good faith and not for the purpose of delay.

FURTHER DECLARANT SAITH NAUGHT.

*/s/ John F. Bemis, Esq.*
JOHN F. BEMIS, ESQ.
Nevada Bar No. 9509

- 4 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Motion seeks to adjudicate an attorney's lien pursuant to NRS 18.015 to compensate Atkinson Watkins & Hoffmann, LLP ("AWH") along with Burk Injury Lawyers formerly known as The Patriot Law Firm ("Patriot") for its services as counsel to Plaintiff, Jesse Castillo in this litigation.  Through AWH and Patriot, Mr. Castillo filed his Complaint against Sunrise Hospital, Dr. Kratlian, Dr. Jones, Inpatient Consultants of Nevada, Inc., and several other providers that were dismissed throughout the process.

After narrowing the Defendants, Plaintiff, through AWH and Patriot, was able to add claims of general negligence against Sunrise Hospital to bring this litigation outside the confines of NRS 41A, including its non-economic damage cap.

This matter resolved in July 2023.  Following the signing of the settlement agreements, Mr. Castillo indicated he did not want to pay AWH and Patriot the 45% contingency fee he contracted.

### II.    FACTS

Mr. Castillo retained Patriot related to causes of action arising from a September 1, 2019, admission to Sunrise Hospital. *See* Patriot's Fee Agreement signed by Mr. Castillo, attached hereto as **Exhibit 1**.  He was transferred to Sunrise Hospital from Kingman Regional Medical Center due to a worry of cauda equina syndrome, requiring immediate surgery.  Through an alleged series of mistakes, Mr. Castillo's surgery was delayed until September 4, 2019.  Thereafter, he did not regain the function to his lower extremities that would have been expected.

Patriot requested that AWH assist it on this matter through a joint representation.  That was agreed to by counsel and the client.  On August 28, 2020, Mr. Castillo's lawsuit was filed through AWH and Patriot.

This matter was extensively litigated, and the Complaint was successfully amended to add uncapped, general negligence claims.  Subsequent thereto, Plaintiff signed a separate Fee Agreement with AWH, which also included an addendum waiving Plaintiff's rights to limit payment of attorneys' fees pursuant to NRS 7.095.  *See*  AWH Retainer Agreement signed by Mr. Castillo, attached hereto as **Exhibit 2**.

The case resolved in late July 2023 based on the risks associated with going to trial on uncapped claims. *See* Declaration of John F. Bemis, Esq., attached hereto as **Exhibit 3**. The settlement amount was agreed to by Plaintiff with full knowledge of the contracted fee agreement. *Id*.

## III.  LEGAL ARGUMENT

**A.    THERE IS AN UNAMBIGOUS STATUTORY RIGHT TO AN ATTORNEY'S LIEN.**

NRS 18.015 provides:

> 1. An attorney at law shall have a lien:
>> (a) Upon any claim, demand or cause of action, including any claim for unliquidated damages, which has been placed in the attorney's hands by a client for suit or collection, or upon which a suit or other action has been instituted.
>> (b) In any civil action, upon any file or other property properly left in the possession of the attorney by a client.
> 2. A lien pursuant to subsection 1 is for the amount of any fee which has been agreed upon by the attorney and client. In the absence of an agreement, the lien is for a reasonable fee for the services which the attorney has rendered for the client.
> 3. An attorney perfects a lien described in subsection 1 by serving notice in writing, in person or by certified mail, return receipt requested, upon his or her client and, if applicable, upon the party against whom the client has a cause of action, claiming the lien and stating the amount of the lien.
> 4. A lien pursuant to:
>> (a) Paragraph (a) of subsection 1 attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action; and
>> (b) Paragraph (b) of subsection 1 attaches to any file or other property properly left in the possession of the attorney by his or her client, including, without limitation, copies of the attorney's file if the original documents received from the client have been returned to the client, and authorizes the attorney to retain any such file or property until such time as an adjudication is made pursuant to subsection 6,
> from the time of service of the notices required by this section.
> 5. A lien pursuant to paragraph (b) of subsection 1 must not be construed as inconsistent with the attorney's professional responsibilities to the client.
> 6. On motion filed by an attorney having a lien under this section, the attorney's client or any party who has been served with notice of the lien, the court shall, after 5 days' notice to all interested parties, adjudicate the rights of the attorney, client or other parties and enforce the lien.
> 7. Collection of attorney's fees by a lien under this section may be utilized with, after or independently of any other method of collection.

The Nevada Supreme Court has recognized that "[t]he attorney's right to be paid is not based upon, or limited to, his lien"; instead it is based upon an express or implied contract, and "[t]he lien is but security for [the attorney's] right. *Sarman v. Goldwater, Taber and Hill*, 80 Nev.

536, 540, 396 P.2d 847, 849 (1964); *see also Gordon v. Steward*, 74 Nev. 115, 324 P.2d 234, 235 (1958). The purpose of NRS 16.015 is to secure attorney's fees and to "encourage attorneys to take cases of those who could not otherwise afford to litigate." *Muije v. A North Las Vegas Cab Co.*, 106 Nev. 664, 667, 799 P.2d 559, 561 (1990); *Bero-Wachs v. Law Offices of Logar & Pulver*, 123 Nev 71, 157 P.2d 704 (2007).

NRS 18.015 dictates that an attorney has a lien on his client's cause of action. The costs in furtherance of the client's litigation may be included in the lien. *See Edwards v. Andrews, Davis, Legg, Bixler, etc.*, 650 P.2d 857, 863 (Okla. 1982). Further, an attorney's Charging or retaining lien may be reduced to personal judgment against a client by the Court hearing the underlying action as a matter of judicial economy. *Gordon v. Stewart*, 74 Nev. 115, 324 P.2d 234, 235 (1958); *Landreth v. Malik*, 251 P.3d 163 (2011).

On October 8, 2022, after this Court permitted Plaintiff to amend his Complaint to include general negligence claims, Mr. Castillo, executed a separate retainer agreement with AWH for 40% contingency fee during litigation. The agreement provided:

> Other counsel within the Firm, or outside counsel, may be associated or employed at the Firm's discretion. The Firm will pay outside counsel's fees out of its own fees.

Mr. Castillo explicitly acknowledged the following lien information:

> Attorney shall have a charging lien upon any and all monies recovered, any judgment obtained thereon, and/or the proceeds of any recovery for attorneys' fees, as described herein, and for any costs advanced, as well as a retaining lien upon the documents for this matter, pursuant to NRS 18.015 and *Golightly & Vannah v. TJ Allen, et al.,* 132 Nev. Adv. Op. 41.

As of October 18, 2022, there were no monies received by the attorneys. As the Nevada Supreme Court held *Golightly & Vannah, PLLC v. TJ Allen, LLC*, 132 Nev. 416, 421, 373 P.3d 103, 106 (2016), in order to allow attorneys working on a contingency basis the ability to comply with NRS 18.015(4)'s requirement to perfect before receiving the funds, the notice of the lien must disclose an attorney's agreed upon contingency percentage and claim court costs and out-of-pocket costs advanced by the attorney in an amount to be determined. *See* Exhibit ___ (AWH Retainer)

Thereafter, AWH, and Patriot Law Firm as associated counsel, provided Mr. Castillo with a detailed breakdown of the lien amount on September 13, 2023, following resolution of his lawsuit.

*See* September 13, 2023, Lien attached hereto as **Exhibit 4**. Thus, Atkinson Watkins & Hoffmann, LLP's lien was in the amount of $728,424.22, comprising of $520,000.00 in attorneys' fees and $208,424.22 in costs. *Id.* The interest on the advanced costs continues.

### B.    PETITIONERS' REQUESTED ATTORNEY FEES ARE REASONABLE IN LIGHT OF THE BRUNZELL FACTORS, AS OUTLINED IN O'CONNELL.

Petitioners' requested attorney fees are reasonable under the Brunzell factors, as outlined in *O'Connell v. Wynn Las Vegas, LLC,* 429 P3d 664 (Nev. Ct. App. 2018). To determine the reasonableness of the amount of the requested attorney fees, Nevada case law requires this Court to weigh the four Brunzell factors: (1) qualities of the advocates: ability, training, education, experience, professional standing, and skill; (2) the character of the work: difficulty, intricacy, importance, time, skill required, and responsibility imposed; (3) the work actually performed: skill, time, and attention; and (4) the result: whether the attorney was successful and the benefits derived. *See Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349–350, 455 P.2d 31, 33 (1969). Petitioners satisfy each of the *Brunzell* factors. Thus, the Court should conclude that the requested attorney fees of $520,000.00 are reasonable. Typically, in finding that Plaintiffs' requested attorney fees are reasonable, the Court relies on its own observations of Plaintiffs' attorneys and their work. See *O'Connell*, 429 P.3d at 672–673; *Herbst v. Humana Health Ins. Of Nev., Inc.,* 105 Nev. 586, 591, 781 P.2d 762, 765 (1989).

### i.    Qualities of the Advocates.

The lead attorneys for Petitioners are John F. Bemis, Esq. and Christopher Burk, Esq. The qualities of the advocates: ability, training, education, experience, professional standing, and skill satisfy the first requirement of *Brunzell*.

#### 1.    John. F. Bemis, Esq.

Mr. Bemis is an established medical malpractice and professional negligence attorney in Las Vegas and has been barred in Nevada since 2005. Mr. Bemis graduated from University of Nebraska in 2002, with a bachelor of science in computer science. He graduated from University of Nebraska College of Law in 2005. From 2008 – 2018, Mr. Bemis' practice was strictly related to insurance defense representing hospitals, physicians and nurses in Nevada courts as well as in

administrative proceedings. Prior to joining Atkinson Watkins & Hoffmann, LLP, Mr. Bemis has served as trial counsel in several professional negligence jury trials. In 2018, Mr. Bemis joined Atkinson Watkins & Hoffmann, LLP as a partner.

Since joining Atkinson Watkins & Hoffmann, Mr. Bemis' practice has focused on complex negligence and professional negligence actions with a focus on the corporate negligence of medical facilities and corporations. Mr. Bemis holds the prestigious "AV Preeminent" peer-rating on Martindale-Hubbell for the highest level of professional excellence. Mr. Bemis' litigation expertise is highly respected by his peers, as he has been named a Mountain States Super Lawyers "Rising Star" for seven consecutive years from 2013- 2020. Additionally, Mr. Bemis has been named as a Mountain States Super Lawyer for the past three years, 2021-2023.

### 2.    Christopher Burk, Esq.

Christopher Burk has worked as a licensed attorney in the state of Nevada since 2004. He has practiced personal injury and medical malpractice litigation (defense and/or plaintiff) since 2006. He is licensed in Nevada, Arizona, California and Hawaii. From 2006 – 2007, Mr. Burk's practice was related to insurance defense representing hospitals, physicians and nurses in Nevada courts as well as nurses in administrative proceedings. Mr. Burk has conducted 11 jury trials since 2007.  Mr. Burk has litigated over 30 professional negligence cases in Nevada, California and Arizona since 2010. Mr. Burk holds the prestigious "AV Preeminent" peer-rating on Martindale-Hubbell for the highest level of professional excellence.

### ii.    The Characters of the Work.

The instant matter is a complex general negligence case against a hospital and hospitalist physicians. This case required extensive review of complex medical records and the preparation of expert affidavits prior to filing the Complaint in order to comply with Nevada statutory requirements. Thereafter, this case involved voluminous motion practice and complex depositions of medical staff, and an understanding of the systems in place at the facilities in order to understand the claims for uncapped general negligence claims arising out of the actions performed by hospital personnel.  In addition, coordination of both standard of care and damages experts was done which included preparation of a life care plan, economic loss analysis and a future life expectancy

analysis. Petitioners' counsel relied upon their many years of prior experience litigating complex, catastrophic injury, and professional liability cases in order to prepare the instant case for trial.

### iii.    The Work Actually Performed.

In the nearly four years this case was in litigation, a plethora of work has been conducted which included taking numerous witness depositions in multiple jurisdictions, preparing for and attending mediation; briefing and arguing several motions, retaining and disclosing numerous expert witnesses, including preparation of an extensive life care plan to address the future care needs of Plaintiff, and conducting focus groups to better understand the most favorable presentation of the many complex issues related to the medical care and general negligence of hospital personnel.

Counsel believed this case to be a true general negligence claim all along, but had to conduct discovery and author pleadings that complied with all professional negligence claim requirements in NRS 41A, to ensure all alternative theories of liability were preserved. Counsel successfully completed discovery in a manner that convinced this Court to allow Plaintiff to pursue general negligence, which ultimately allowed this case to settle prior to trial.

### iv.    The Result Speaks for Itself.

Petitioners' attorneys were able to reach a negotiated settlement with all Defendants. These named Defendants settled this disputed case for $1,300,000.00. This is despite Defendants claiming Plaintiff's lack of follow-up care indicated that all future damages were never going to be realized.

### v.    All *Brunzell* Factors are Met.

In order to award the requested 40% fee, Nevada case law requires this Court to weigh the four *Brunzell* factors, which, to recap, are: (1) qualities of the advocates: ability, training, education, experience, professional standing, and skill; (2) the character of the work: difficulty, intricacy, importance, time, skill required, and responsibility imposed; (3) the work actually performed: skill, time, and attention; and (4) the result: whether the attorney was successful and the benefits derived. *Id*. As evidenced above, it is indisputable that all *Brunzell* factors are met in this case.

**C.    THE ATTORNEY FEES RECOVERABLE AGAINST PLAINTIFF ARE NOT RESTRICTED BY NRS 7.095.**

NRS 7.095 states:

> 1.    An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of:
>
> (a)  Forty percent of the first $50,000 recovered;
> (b)  Thirty-three and one-third percent of the next $50,000 recovered;
> (c)  Twenty-five percent of the next $500,000 recovered; and
> (d)  Fifteen percent of the amount of recovery that exceeds $600,000.
>
> 2.    The limitations set forth in subsection 1 apply to all forms of recovery, including, without limitation, settlement, arbitration and judgment.
>
> 3.    For the purposes of this section, "recovered" means the net sum recovered by the plaintiff after deducting any disbursements or costs incurred in connection with the prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and general and administrative expenses incurred by the office of the attorney are not deductible disbursements or costs.
>
> 4.    As used in this section:
>
> (a)  "Professional negligence" means a negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death. The term does not include services that are outside the scope of services for which the provider of health care is licensed or services for which any restriction has been imposed by the applicable regulatory board or health care facility.
>
> (b)  "Provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractic physician, doctor of Oriental medicine, holder of a license or a limited license issued under the provisions of chapter 653 of NRS, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees.

Without any legal basis, the client has argued that AWH and Patriot's recovery should be limited by NRS 7.095. Notwithstanding Mr. Castillo's waiver of NRS 7.095, discussed below, there are other reasons that the 40% contingency fee should be awarded.

As it relates to the hospital settlement, the recovery obtained here was made possible solely through the development of a legitimate, uncapped, general negligence claim, i.e. not a professional negligence claim required by NRS 7.095. On June 14, 2022, the Court Granted Plaintiff's Motion to Amend to bring general negligence claims against the hospital entities. On July 12, 2022, Plaintiff filed his Third Amended Complaint with general negligence claims against the hospital entities. *See* Third Amended Complaint, attached hereto as **Exhibit 5**. The general

negligence claims are not bound by the NRS 7.095, as by its explicit language, it only applies to "…an action for injury or death against a provider of health care based upon professional negligence..." *Id*. Indeed, Petitioners were only able to secure a large settlement from the hospital entities because of the uncapped claims.

Additionally, NRS 7.095 does not apply to a physicians' medical group, like the one that was involved in the resolution of this matter. In looking at NRS 7.095, it only applies to professional negligence of providers of healthcare. The plain language of NRS 7.095 defines the types of defendants for which fees are limited as follows:

> (b) "Provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, holder of a license or a limited license issued under the provisions of chapter 653 of NRS, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees. Id.

As it relates to the physician settlements, the resolution was made with the individual physicians and their group. The group, Inpatient Consultants of Nevada, Inc., was vicariously liable for the conduct of the physicians. The plain language of the statute does not list a practice or medical office as a provider of healthcare. As such, NRS 7.095 cannot apply to Inpatient Consultants of Nevada, Inc. This Court has specifically found a medical practice to not be a provider of healthcare in other cases. *See Martyn, v. Nevins*, A-10-625101-C, attached hereto as **Exhibit 6**. In *Martyn*, this Court specifically found a fee of 50% based on a contingency fee agreement was warranted against Nevada Orthopedic & Spine for the conduct of Dr. Nevins. This Court found that Nevada Orthopedic & Spine was not a provider of healthcare, as specifically defined in NRS 7.095(a)(e), and as such NRS 7.095 was not applicable as to Nevada Orthopedic & Spine. *Id*. This case is the exact same issue as *Martyn*. Because *Brunzell* is met, a fee of 40% should be awarded here.

**D.    EVEN IF THE ATTORNEY FEES MAY BE LIMITED BY NRS 7.095, PLAINTIFF KNOWINGLY, VOLUNTARILY AND INTELLEGENTLY WAIVED NRS 7.095, AGREEING TO A CONTINGENCY FEE OF 40%.**

On October 5, 2022, Mr. Castillo executed a waiver of NRS 7.095. The waiver, attached hereto as **Exhibit 7**, explicitly advises Mr. Castillo of the terms of NRS 7.095 and that he

knowingly and voluntarily waived said provisions.  In doing so, Mr. Castillo agreed to the 40%

contingency fee.  Mr. Castillo expressly waived rights concerning NRS 7.095 applying to any

proceeds derived from his litigation.  It is only after the resolution, that he wants to claim the rights

of NRS 7.095.  Of course, if this case actually sounded in professional negligence, Petitioners

would not have been able to secure a settlement for Mr. Castillo and the matter would have required

trial.  Thus, Mr. Castillo cannot have it both ways.

In 2019, this precise issue arose in the Eighth Judicial District Court, *Mendoza v. Johnson*

was a medical malpractice claim brought by two parents on behalf of their minor son. The case

involved a young boy who had a brain tumor that went undiagnosed, and ultimately a professional

negligence claim was filed by the Galliher Law Firm against various doctors and medical facilities.

The retainer agreement signed by the parents of the injured boy provided for a 33 1/3% fee if sums

were collected prior to filing a lawsuit, which went up to 40% if a lawsuit was filed. About a year

later, another law firm, Eglet Prince, associated in to assist on the case, which also called for 40%

attorney fees.  Neither fee agreement expressly advised the client of NRS 7.095. Ultimately,

through the hard work of their attorneys, the matter was resolved and a Petition to Compromise

requesting the agreed upon 40% fee was filed. The parents/Petitioners sent a letter to the Court

objecting to the 40% fee disbursement stating that they were unaware of NRS 7.095. The attorneys

disagreed and stated that the Petitioners had been orally informed of and had waived the fee

limitations imposed by 7.095.

The Court first undertook to evaluate whether NRS 7.095 could be waived and after

substantial briefing on the topic, found and ordered that indeed it could. *See* Mendoza Order,

attached hereto as **Exhibit 8**. Next, the Court held an evidentiary hearing as to whether there was

a knowing, voluntary, and intelligent waiver of NRS 7.095 and found that "the Nevada fee

limitation was explained to the Mendoza's at the time they executed the Galliher Retainer

Agreement" and awarded the attorneys the requested 40% in fees. *Id*.

Similarly, in the instant situation Mr. Castillo is only objecting to the 40% contingency

after the settlement agreements have been signed and the money is to be distributed.  Here, the

waiver was accomplished and is valid according to the analysis provided by the *Mendoza* decision.

Moreover, in this case, Atkinson Watkins & Hoffmann, LLP explicitly made Mr. Castillo aware of the statutory framework before receiving Mr. Castillo's written waiver.

### E.    NEVADA LAW SPECIFICALLY UPHOLDS CONTINGENCY FEE AGREEMENTS AS A MEASURE FOR AWARDING ATTORNEY FEES.

Because waiver is permitted, the contingency fee agreement stands as the instrument by which attorney fees should be awarded. Billing records are not required to support an award of attorney fees. *O'Connell,* 429 P.3d at 670. "Attorney fees can be awarded when they are based upon contingency fee agreements." Id. At 666. *O'Connell* also cited with approval other authorities allowing a consideration of the type of case, the length of the trial, the difficulty of the case, the numbers and types of witnesses, as well as other relevant factors to determine a reasonable attorney fee. *Id*. At 671 (*citing McNeel v. Farm Bureau Gen. Ins. Co.*, 795 N.W.2d 205, 220 (Mich. App. 2010); *Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 62 Cal. Rptr. 3d 665, 676 (Ct. App. 2007) (concluding that the trial court did not abuse its discretion in an attorney fees award case, in part, because, despite a lack of billing records, the Mardirossian attorneys had personal knowledge of the legal work they performed and "each testified at length concerning the work he or she performed, the complexity of the issues and the extent of the work that was required").

In addition to the kinds of evidence allowed to support contingency fee awards, *O'Connell* also explained that attorneys who work on a contingency basis take risks under such fee agreements, which should factor into the award of fees. Id. At 671 (*citing King v. Fox*, 7 N.Y.3d 181, 851 N.E.2d 1184, 1191–1192, 818 N.Y.S.2d 833 (N.Y. 2006) ("In entering into contingent fee agreements, attorneys risk their time and resources in endeavors that may ultimately be fruitless. Moreover, it is well settled that the client may terminate [the contingency fee agreement] at any time, leaving the lawyer no cause of action for breach of contract[,] only quantum meruit." (first alteration in original) (citation and internal quotation marks omitted)); *see also Scheme v. Reliable Collection LLC, Agency, Ltd.,* 96 Haw. 408, 32 P.3d 52, 96–97 (Haw. 2001) (concluding that fee awards can be justified based on the risks associated with accepting a case on a contingency fee basis). Courts should also account for the greater risk of nonpayment for attorneys who take

contingency fee cases, in comparison to attorneys who bill and are paid on an hourly basis, as they normally obtain assurances, they will receive payment. *O'Connell*, 429 P.3d at 671 (citing See *Rendine v. Pantzer*, 141 N.J. 292, 661 A.2d 1202, 1228 (N.J. 1995) (recognizing that rewarding a lawyer for taking a case for which compensation is contingent on the outcome is based in part on providing a monetary incentive for taking such cases because an hourly fee is more attractive unless such an extra incentive exists)). Thus, in considering the requested attorneys' fees of 40% of the total settlement, the Court should consider the enormous risk undertaken by Petitioners' attorneys in this case.

The *O'Connell* court further noted that contingency fee agreements level the playing field for those, like Petitioners, who "cannot afford an attorney who bills at an hourly rate to secure legal representation." *Id*. at 671 (*citing King*, 851 N.E.2d at 1191 ("Contingent fee agreements between attorneys and their clients . . . generally allow a client without financial means to obtain legal access to the civil justice system.")). Mr. Castillo would not have been able to afford to pursue litigation against these providers absent the contingency fee agreements. The time, effort, and money it takes to litigate a complex general negligence and professional negligence case is significantly more than any other type of personal injury case.

With this established framework, the Court of Appeals provided additional guidance on determining an amount of attorney fees based upon a contingency fee agreement. The Court reiterated that hourly billing records are not required and identified several other factors. *O'Connell*, 429 P.3d at 672 (*citing Hsu v. Cty. of Clark*, 123 Nev. 625, 637, 173 P.3d 724, 733 (2007) (remanding the issue of attorney fees to the district court to determine a starting point and adjust the fee accordingly based on several factors, including the "time taken away from other work," case-imposed deadlines, how long the attorney worked with the client, the usual fee and awards in similar cases, if the fee was contingent or hourly, the amount of money at stake, and how desirable the case was to the attorneys involved); RPC 1.5(a)(1)–(8)). The District Court's own observations are also important in determining an amount of attorney fees to award. *O'Connell,* 429 P.3d at 672–673; *Herbst v. Humana Health Ins. of Nev., Inc.*, 105 Nev. 586, 591, 781 P.2d 762, 765 (1989) (reviewing an attorney's affidavit of the number of hours of work

performed and concluding that this document, "combined with the fact that Herbst's attorney worked for two years on the case, established 12 volumes of records on appeal, and engaged in a five day trial should enable the court to make a reasonable determination of attorney's fees").

Since *O'Connell* was decided nearly three years ago, other courts have unanimously cited it with approval. *See, e.g., Katz v. Incline Vill. Improvement Dist.*, Order of Affirmance, Dkt. No. 71493, at *8 (Nev. 2019) (unpublished) ("[W]e conclude that the district court relied on sufficient evidence to calculate a reasonable amount for Brooke's services.") (*citing O'Connell*, 134 Nev. at 557– 558, 429 P.3d at 670 (holding that billing records are not required to support an award of attorney fees so long as the court can calculate a reasonable fee)). Therefore, the Court should be guided by *O'Connell* in awarding Petitioners their requested attorney fees of 40% of the settlement.

### F.    MONEY IN DISPUTE.

Mr. Castillo, through counsel, has attempted to bring this dispute to a close.  Currently, Mr. Castillo has had $481,369.15 distributed to him.  At the time of filing, an additional $55,920.03 has been wired, but may not have been received.  $10,000 has been retained, in trust for final adjudication of fees and costs associated with the instant filing. AWH and Patriot have had an undisputed $360,000, distributed to them for attorneys' fees only.  *See* **Exhibit 9**. There has been an agreement to disburse $24,286.00 in costs.  The remaining amounts in dispute are $159,079.97 in attorney fees owed to AWH and Patriot.  Additionally, the costs totaling $209,344.85 have not been expressly approved by client, and interest continue to accrue.  *See*  Memorandum of Costs and Disbursement, attached hereto as **Exhibit 10**.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.     <u>CONCLUSION</u>

Based on the foregoing, AWH and Patriot request an Order from this Court to allow them to disburse the remaining $159,079.97 in attorneys' fees and $209,344.85 in costs.  Additionally, AWH and Patriot seek the fees and costs associated with adjudicating their lien in this matter.

DATED this  <u>12th</u>  day of October, 2023.

ATKINSON WATKINS & HOFFMANN, LLP

<u>/s/ John F. Bemis, Esq.</u>
JOHN F. BEMIS, ESQ.
Nevada Bar No. 9509
10789 W. Twain Avenue, Suite 100
Las Vegas, NV 89135

CHRISTOPHER D. BURK, ESQ.
Nevada Bar No. 8976
BURK INJURY LAWYERS
2350 W. Charleston Blvd., Ste. 202
Las Vegas, NV 89102
*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I am an employee of ATKINSON WATKINS & HOFFMANN, LLP and that on the _12th_ day of October, 2023, I caused to be served via U.S. Mail and via Odyssey, the Court's mandatory efiling/eservice system, a true and correct copy of the document described herein.

**Document Served:    <u>MOTION TO ADJUDICATE ATTORNEYS' LIEN ON AN ORDER SHORTENING TIME</u>**

**Person(s) Served:**

Jesse Castillo
3813 Iroquois Lane
Kingman, AZ 86401
*Plaintiff*

Bradley L. Booke, Esq.
Nevada Bar No. 2662
LAW OFFICE OF BRADLEY L. BOOKE
10161 Park Run Dr., #150
Las Vegas, NV 89145
*Attorney for Mr. Castillo*

Christopher D. Burk, Esq.
Nevada Bar No. 8976
BURK INJURY LAWYERS
2350 West Charleston Blvd, Suite 202
Las Vegas, NV 89102
*Co-Counsel for Plaintiff*

_/s/ Erika Jimenez_____
An Employee of ATKINSON WATKINS & HOFFMANN, LLP

- 18 -

EXHIBIT 1

DocuSign Envelope ID: C89C0235-B4764B5D-831F-82BABC773EBA

### THE PATRIOT LAW FIRM CORP.

**Christopher D. Burk, Esq.**
‡ Licensed in Nevada, Arizona & California

T: (702) 620-2020 || F: (702) 623-5113



**CONTINGENCY FEE AGREEMENT BETWEEN CLIENT AND THE PATRIOT LAW FIRM CORPORATION FOR DATE OF INCIDENT** September 1 , 20 19

1.  If there is no recovery, verdict or settlement, there shall be no Attorney fee or Attorneys cost unless a lien is put on the case. This matter only may be settled with the consent of Client.

2.  **Attorney shall be paid the greater of: a) 33.3% of any money recovered in this matter if settled before filing a lawsuit, or b) 40% of the settlement/verdict if the matter is settled after a lawsuit is filed, 45% if settled within 45 days of trial and 50% if any appeal is involved. The fee percentage is calculated prior to any deductions for attorneys Costs.**

3.  In addition, if there is a settlement or plaintiff jury verdict, Client shall pay for all attorney expenses incurred or advanced by Christopher D. Burk, Esq. in handling this matter ("Costs"). This includes, but is not limited to: expert fees/costs, focus groups, mock juries, mock trials, trial preparation, trial costs, arbitrators, arbitration costs, arbitration preparation, fax, postage, process servers, court filing fees, mediation, mediators, travel costs, hotel costs, attorney mileage, file set up, exhibit costs and any other cost to prosecute or settle the case.

4.  Client shall not compromise this claim by speaking to any party, insurance carrier or adversarial attorney without consulting The Patriot Law Firm first.

5.  Client shall keep attorney updated as to medical treatment and billing.

6.  Client shall keep attorney updated as to all contact information (phone #, address, email address, etc.)

7.  Client hereby authorizes the Attorney to hire investigators and experts on the case as needed and to prepare for trial or mediation as needed.

8.  At any time in the case Attorney may withdraw from representation of Client via written notice.

9.  Client hereby authorizes the Attorneys to sign the Client's name to any and all releases, dismissals, forms, settlement checks, medpay/medical payments/PIP/Personal injury protection checks drafts and other papers as necessary.

10. **If Client terminates Attorney, Client shall pay Attorney all costs advanced, and attorney fees calculated at $400.00 per hour, and case manager/paralegal fees at $100.00 per hour and/or 33.4/40% of the most recent settlement offer prior to discharge, pursuant to subsection 2 above, whichever is larger. These fees include, but are not limited to: emails, phone calls, in person consultations, document review, document preparation, pleading preparation, court appearances, deposition appearances, etc.**

Initial __JC__

11. Client acknowledges that, in the event of a loss, the Client may be liable for the opposing party's attorney's fees and costs. In the event of a loss of the case during litigation where the court rules against our client or there is a loss at trial, the client is not responsible to reimburse for their costs.

12. Client understands that a suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.

**MAIN:** 2350 WEST CHARLESTON BOULEVARD, SUITE 202 LAS VEGAS, NEVADA 89102    433 NORTH CAMDEN DRIVE 6TH FLOOR BEVERLY HILLS, CALIFORNIA 90210    11201 NORTH TATUM BOULEVARD SUITE 300 PMB #224 PHOENIX, ARIZONA 85028

*THE PATRIOT LAW FIRM CORP.*

**Christopher D. Burk, Esq.**
‡ Licensed in Nevada, Arizona & California

T: (702) 620-2020 || F: (702) 623-5113



**THE PATRIOT**
L A W   F I R M

13.  **Attorney may obtain loans or lines of credit to advance costs and other expenses. In the event Attorney obtain such loans or lines of credit, Client shall be responsible for paying all costs associated with obtaining such financing, including but not limited to, interest charges incurred on the costs and expenses advanced."**

Initial ___JC___

14.  Client acknowledges that Attorney, at its sole discretion, has the right to finance all or a portion of the costs through a lending facility and that the interest expense and other associated charges of the financing will be passed on to Client as a case preparation cost. The combined interest and financing expenses, if such occurs, will be equal to or less than the highest lawful rate allowable by law.

This Retainer is governed by the laws of the State of Nevada.

15.  <u>**The Patriot Law Firm Corp. cannot promise or guarantee success or a particular amount on any case.**</u>

<u>**Clients:**</u>

DocuSigned by:

*Jesse Castillo*

1268FACCFD9F4DE...

Client(s)

<u>**Attorneys:**</u>

Attorney    4/16/20

**MAIN:** 2350 WEST CHARLESTON BOULEVARD, SUITE 202 LAS VEGAS, NEVADA 89102

433 NORTH CAMDEN DRIVE 6TH FLOOR BEVERLY HILLS, CALIFORNIA 90210

11201 NORTH TATUM BOULEVARD SUITE 300 PMB #224 PHOENIX, ARIZONA 85028

# EXHIBIT 2

## CONTRACT FOR RETAINER OF LEGAL SERVICES
### (Contingency Fee)

The undersigned (hereinafter "Client") hereby employs the law firm of ATKINSON WATKINS & HOFFMANN LLP dba BATTLE BORN INJURY LAWYERS ("Attorney" or the "Firm") to pursue any insurance claim and/or prosecute any legal action arising personal injuries suffered on or about the date indicated on any Traffic Crash Report, the accompanying Client Information Sheet, or as otherwise indicated herein _____ ("Incident"), based upon the terms and conditions outlined herein.

The amount of attorneys' fees for the legal services provided under this Agreement will be:

**40 percent (%)** of the total amount of any monies received by compromise or settlement prior to commencement of a lawsuit, or any appeal to the Nevada Supreme Court, Nevada Court of Appeals, federal appellate court, or any administrative appellate process or similar action seeking to vacate, amend, and/or enforce any administrative or arbitration order or verdict.

**50 percent (%)** of the total amount of any monies received after filing of an appeal to the Nevada Supreme Court, Nevada Court of Appeals, federal appellate court, or any administrative appellate process or similar action.

Notwithstanding the attorneys' fees noted above, if litigation commences and (1) the Client is awarded attorneys' fees on an hourly basis, then the attorneys' fees will be calculated based of the rate schedule below, or (2) if the Client discharges the Firm, then the attorneys' fees charged to Client shall be the greater of the applicable contingency fee described above or the Firm's hourly rate, whichever is greater. The Firm's hourly rates are as follows:

| | | | |
|---|---|---|---|
| Partner | $750.00 | Law Clerk | $250.00 |
| Associate Attorney | $450.00 | Paralegal | $150.00 |

**Attorneys' fees will be calculated based on the total monies received before costs are deducted.** That is, the costs advanced by the Firm will be paid from the Client's portion of the monies received and will not be deducted from the amount of attorneys' fee.

"Costs" include "hard" costs, such as filing fees, witness fees, deposition expenditures, travel, postage, costs of investigation, expert witnesses, and anything authorized pursuant to N.R.S. 18.005 which will be advanced by the Firm. Such costs and expenses will incur interest at the rate of up to 1.5% per month, either through the Firm itself or its lending institution. At the conclusion of the case all such monies, both principal and interest, shall be reimbursed by the Client to the Firm.

"Soft" costs, such as copying charges, telefax charges, telephone expenses, internet data access, legal research, and related overhead expenditures. Costs will include a minimum charge for "soft" costs of Two Hundred Fifty Dollars ($250.00) for matters resolved prior to commencement of a lawsuit, arbitration, or trial, and an additional Two Hundred Fifty Dollars ($250.00) after commencement of a lawsuit, arbitration, or trial.

Attorney shall have a charging lien upon any and all monies recovered, any judgment obtained thereon, and/or the proceeds of any recovery for attorneys' fees, as described herein, and for any costs advanced, as well as a retaining lien upon the documents for this matter, pursuant to NRS 18.015 and *Golightly & Vannah v. TJ Allen*, et al., 132 Nev. Adv. Op. 41.

Client: _____

Legal services that are not to be provided by the Firm under this Agreement specifically include, but are not limited to, representation with respect to (a) any claim for property damage arising out of the Incident, (b) any dispute with any medical care provider about amounts owed by Client for services received (other than those on Attorney Lien), or (c) workman's compensation claims.

Attorney will perform the legal services called for under this Agreement, keep Client informed of progress and developments, and respond promptly to Client's inquiries and communications. Client will be truthful and cooperative with Attorney and keep Attorney reasonably informed of developments and of Client's current address, telephone number and whereabouts.

Other counsel within the Firm, or outside counsel, may be associated or employed at the Firm's discretion. The Firm will pay outside counsel's fees out of its own fees.

Referral fees may be paid to other licensed attorneys and outside counsel. Client acknowledges and agrees that the Firm may, at its discretion, pay up to half (50%) of its Attorneys' fee to referring counsel, without any further consent from Client. The referral fees will be paid from the Firm's attorneys' fees and will not increase the total amount of fees paid by Client under this Agreement.

Should the relationship between Attorney and Client be terminated by Client, Client agrees to pay Attorney at an hourly rate, noted above, or the stated percentage of any settlement offered (whichever is greater), as compensation for Attorney's services. The amount will be due and owed upon receipt of any monies by Client.

The outcome of negotiations and litigation is subject to factors which cannot always be foreseen. Therefore, it is understood that Attorney has made no promises or guarantees to Client regarding the outcome of this representation and cannot do so.

**In the event of a loss, or other circumstances specified by Nevada law, Client may be liable for the opposing party's attorneys' fees and costs. A list of statutes can be provided upon request to explain these circumstances. A suit brought solely to harass or coerce may result in liability for malicious prosecution and/or abuse of process.**

Loans or advances to Client by the Firm are strictly prohibited by law. The Firm strongly discourages Client from obtaining any litigation or pre-judgment loans from any third-party as an advance of recovery against Client's claim. The Firm will not assist Client in obtaining any sort of loan. Should Client desire the assistance from the Firm in preparing documents for the purpose of obtaining a prejudgment loan, an hourly rate may be charged to the Client for the time spent.

Client agrees to fully cooperate with Attorney, including but not limited to: appearing for appointments, deposition, court hearings and/or as otherwise requested by Attorney.  Client will immediately notify Attorney if there are any changes to the contact information provided below. Client understands that Attorney must be able to contact Client in order to meet certain deadlines that may be set by the court of the opposing party(ies).

Client: J.C

Rev 07.2022

Client gives Attorney full Power of Attorney to execute all demands, complaints, dismissals and deposits, in every respect, including endorsement of checks. Attorney is authorized to exercise all lien rights, disburse costs, attorneys' fees earned, and assignments voluntarily executed by Client. In the event Client fails to notify Attorney of changes to contact information, and Attorney is unable to locate or otherwise communicate with Client, Client gives Attorney full Power of Attorney to make demands, issue offers and/or accept offers of comprise on Client's behalf.

I have read and fully understood the above contract and agree to the terms set forth therein.

Dated: 10/8/22

**CLIENT**                                          **ATKINSON WATKINS & HOFFMANN LLP**

Signature: _____                 By: _____

Print Name: Jesse Castillo                          Its: _____

3

EXHIBIT 3

## DECLARATION OF JOHN F. BEMIS, ESQ.

STATE OF NEVADA          )
                         ) ss.:
COUNTY OF CLARK          )

I, JOHN F. BEMIS, ESQ., being first duly sworn deposes and says:

1.      I am an attorney at the law firm of Atkinson Watkins & Hoffmann, LLP, Petitioner in this matter. I have personal knowledge of, and am competent to testify to, the facts contained in this declaration, except on those matters stated upon information and belief, and as to those matters, I believe them to be true.

2.      I make this declaration in support of this Motion to Adjudicate Attorneys' Lien ("Motion").

3.      On or about May 13, 2022, declarant filed a Motion to Amend Complaint in the underlying action.  This Motion was based on extensive discovery and depositions conducted by counsel in advancing Mr. Castillo's case.

4.      Prior to the filing of the Motion to Amend, there were no meaningful settlement offers or discussions.

5.      The resolution of this case was brought forward by the general negligence claims against the hospital, including but not limited to, delays caused by non-providers of medicine, delays caused by non-professional judgment and decisions, and simple failure to follow requested instructions.

FURTHER DECLARANT SAITH NAUGHT.

                                          JOHN F. BEMIS, ESQ.
                                          Nevada Bar No. 9509

# EXHIBIT 4

Troy L. Atkinson (1977-2016)
Justin L. Watkins • CA, UT
Matthew W. Hoffmann • CA, ND
Steven J. Yeager
John F. Bemis
Tyler M. Crawford
Kathleen S. Villatoro



**BATTLEBORN**
**INJURY LAWYERS**

DBA of Atkinson Watkins
& Hoffmann LLP

<u>Reply To:</u>

September 13, 2023

<u>**VIA REGULAR & CERTIFIED RETURN RECEIPT U.S. MAIL: 70221670000127763483**</u>

Jesse Castillo
3813 Iroquois Ln.
Kingman, AZ 86401

RE:   **Castillo v. Lin, et al.**
      **District Court Case No. A-20-820371-C**

**NOTICE OF CLAIM OF ATTORNEY'S LIEN PURSUANT TO NRS 18.015, NRS 616C.205 and**
***Golightly & Vannah, PLLC v. TJ Allen, LLC*, 373 P.3d 103, 104 (2016)**

NOTICE IS HEREBY GIVEN that ATKINSON WATKINS & HOFFMANN, LLP dba BATTLE BORN INJURY LAWYERS ("BATTLE BORN") and BURK INJURY LAWYERS ("BURK") claim a lien for their services upon the claims for relief in the above-entitled case, and upon any and all other property or funds that may become available on behalf of JESSE CASTILLO.  The Lien is against the recovery of JESSE CASTILLO for attorneys' fees in the amount of $520,000.00 which represents 40% of the settled amount of $1,300,000.00. BATTLE BORN and BURK also make a claim for a lien against the recovery of JESSE CASTILLO for costs in the amount of $208,424.22, for a **total lien of $728,424.22** with costs still accruing.

cc:   Jesse Castillo
      c/o Douglas Sutherland, Esq.
      722 E. Beale Street
      Kingman, AZ 86401
      (Via Regular & Certified Return Receipt U.S. Mail: 70221670000127763490)

Encl.


**Expense Report**

**Matter Name :** Castillo, Jesse

**Expense Type :**

**Expense Tags :**

**Outstanding :** No

**File # :** 202821

**Records Of :**

**Ordered By :** Last Updated DESC

**Disbursable :**

**Total**    Expense: **$175,143.89**    Paid: **$1,750.00**    Outstanding: **$173,393.89**

| Associated Party | Expense Name, Expense Tags, Expense Type | Provider | Disbursable | Date Incurred, Date Exported | Expense Amount, Paid Amount, Outstanding Amount | Check #, Check Date, Bank Details | Memo |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Case Expense Expert Witness Report/Testimony | Ashvin K. Tadakamalla | Yes | 08/11/2023 08/31/2023 | $1,750.00 $1,750.00 $0.00 | 2218 09/06/2023 | - |
| Jesse Castillo | Interest Expense thru 9/6/2023 - | - | - | 09/06/2023 - | $13,936.86 $0.00 $13,936.86 | - - - | - |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/04/2023 - | $1,400.00 $0.00 $1,400.00 | - - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Invoice dated 4/19/23 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/22/2021 - | $85.00 $0.00 $85.00 | - - - | Description : Due To Firm Memo : Legal Process Service; Invoice #2109141 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12090057 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/24/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 9921475 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/07/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 11615271 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/14/2021 - | $1,587.80 $0.00 $1,587.80 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1494737 Code : DTF |

| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/02/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 11920029 Code : DTF |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 02/10/2022 - | $482.65 $0.00 $482.65 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1517886 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 03/23/2023 - | $406.90 $0.00 $406.90 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1609342 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 11/09/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6907154 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/22/2021 - | $65.00 $0.00 $65.00 | - - - | Description : Due To Firm Memo : Legal Process Service; Invoice #2109142 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/18/2023 - | $960.00 $0.00 $960.00 | - - - | Description : Due To Firm Memo : Persky, R.N., Georgia; Invoice 5.2.23 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/25/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 9752074 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/04/2023 - | $467.14 $0.00 $467.14 | - - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Invoice for Conf. Room Rental (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/11/2022 - | $744.85 $0.00 $744.85 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1557072 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/10/2020 - | $78.90 $0.00 $78.90 | - - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006840 Code : DTF |

| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 11/05/2020 - | $51.75 $0.00 $51.75 | - - - | Description : Due To Firm Memo : Legal Process Service; Invoice #2006835 Code : DTF |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/23/2022 - | $3,000.00 $0.00 $3,000.00 | - - - | Description : Due To Firm Memo : Persky, R.N., Georgia; Retainer (Castillo, Jesse) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 03/02/2023 - | $798.95 $0.00 $798.95 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1603469 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/06/2023 - | $14,150.00 $0.00 $14,150.00 | - - - | Description : Due To Firm Memo : Palmer, M.D., Sylvain; Invoice 4/5/23 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/07/2023 - | $255.20 $0.00 $255.20 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1624330 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/26/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 8453440 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/07/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 8680347 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/13/2022 - | $747.00 $0.00 $747.00 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1509339 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12089056 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/01/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 10127399 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/11/2022 - | $13,850.00 $0.00 $13,850.00 | - - - | Description : Due To Firm Memo : Palmer, |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | M.D., Sylvain; Castillo v. Lin Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/21/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12016911 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/21/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12017321 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/14/2021 - | $1,600.00 $0.00 $1,600.00 | - - - | Description : Due To Firm Memo : Invoice dated 11/29/21 (Jesse Castillo) Code : DTF Paid Date : 12-16-2021 00:00:00 C/D : Debit Transaction Type : Payment Check Number : DELETED |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/11/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6607657 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/07/2021 - | $1,012.90 $0.00 $1,012.90 | - - - | Description : Due To Firm Memo : Phipps Reporting, Inc.; Invoice #193804 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12088793 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/10/2020 - | $78.90 $0.00 $78.90 | - - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006844 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/27/2023 - | $5,100.00 $0.00 $5,100.00 | - - - | Description : Due To Firm Memo : Persky, R.N., Georgia; Invoice dated 5/2/23. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/28/2022 - | $216.41 $0.00 $216.41 | - - - | Description : Due To Firm Memo : No Rush Charge Imaging, LLC; Invoice #NRC01807295 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | - - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12090377 Code : DTF Start Date : 07/06/0203 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/12/2021 - | $3.50 $0.00 $3.50 | - - | Description : Due To Firm Memo : 7218130 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/17/2020 - | $45.00 $0.00 $45.00 | - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006837 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/04/2022 - | $300.00 $0.00 $300.00 | - - | Description : Due To Firm Memo : Legal Process Service; Invoice #2205120 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | - - | $500.00 $0.00 $500.00 | - - | Description : Due To Firm Memo : SOFT COSTS Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 11/03/2022 - | $5,800.00 $0.00 $5,800.00 | - - | Description : Due To Firm Memo : Palmer, M.D., Sylvain; Castillo v. Lin (10.20.22) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/15/2022 - | $1,500.00 $0.00 $1,500.00 | - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Invoice 10/31/22 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/17/2020 - | $3.50 $0.00 $3.50 | - - | Description : Due To Firm Memo : 7109955 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/25/2022 - | $3.50 $0.00 $3.50 | - - | Description : Due To Firm Memo : 9233484 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 03/31/2022 - | $1,075.00 $0.00 $1,075.00 | - - | Description : Due To Firm Memo : Advanced Resolution Management; Invoice #11250_Castillo v. Inpatient Cons. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/28/2021 - | $6,800.00 $0.00 $6,800.00 | - - | Description : Due To Firm Memo : Fish, MD, MPH, David E.; Retainer_Castillo, Jesse Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/01/2022 - | $3.50 $0.00 $3.50 | - - | Description : Due To Firm Memo : 10126971 Code : DTF |

| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/26/2023 - | $335.31 $0.00 $335.31 | - - - | Description : Due To Firm Memo : No Rush Charge Imaging, LLC; Invoice #NRC01807912 Code : DTF |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/20/2021 - | $784.10 $0.00 $784.10 | - - - | Description : Due To Firm Memo : Inv. 1489471- Lit Svcs Code : DTF Paid Date - 09-23-2021 00:00:00 C/D : Debit Transaction Type : Payment Check Number : DELETED |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/20/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 10060385 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/08/2022 - | $2,668.00 $0.00 $2,668.00 | - - - | Description : Due To Firm Memo : Taylor, M.D., Dr. J. Bradley; Invoice 11/20/22. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 02/23/2023 - | $1,669.00 $0.00 $1,669.00 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1602411 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/11/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6609066 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/08/2022 - | $400.00 $0.00 $400.00 | - - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Invoice 11/28/22 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 03/31/2022 - | $844.55 $0.00 $844.55 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1531639 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/20/2023 - | $605.90 $0.00 $605.90 | - - - | Description : Due To Firm Memo : Esquire Deposition Solutions, LLC; Invoice #INV2458788 Code : DTF |

| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/20/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 9733295 Code : DTF |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/12/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 10179946 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 03/18/2021 - | $39.60 $0.00 $39.60 | - - - | Description : Due To Firm Memo : CIOX Health; Invoice #0331671843 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 11/18/2021 - | $2,500.00 $0.00 $2,500.00 | - - - | Description : Due To Firm Memo : Fish, MD, MPH, David E.; Telemedicine Appt. (Castillo, Jesse) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/21/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 9071251 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/28/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 9258397 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/21/2022 - | $118.00 $0.00 $118.00 | - - - | Description : Due To Firm Memo : Legal Process Service; Invoice #2202708 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2032 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12091674 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 11/03/2022 - | $8,500.00 $0.00 $8,500.00 | - - - | Description : Due To Firm Memo : Tadakamalla, M.D., Ashvin K.; Castillo v. Lin (11.1.22) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/29/2022 - | $5,000.00 $0.00 $5,000.00 | - - - | Description : Due To Firm Memo : Tadakamalla, M.D., Ashvin K.; Retainer (Castillo, Jesse) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/01/2022 - | $2,000.00 $0.00 $2,000.00 | - - - | Description : Due To Firm Memo : Tadakamalla, M.D., Ashvin K.; Invoice 11.30.22 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/14/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6619307 Code : DTF |

| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12089543 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/09/2021 - | $694.50 $0.00 $694.50 | - - - | Description : Due To Firm Memo : Invoice #1508905 Code : DTF Paid Date : 12-16-2021 00:00:00 C/D : Debit Transaction Type : Payment Check Number : DELETED Note : Deposition taken of Def Charles Shin Lin, MD on 11/30/21. |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/04/2023 - | $1,163.60 $0.00 $1,163.60 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1617751 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/26/2021 - | $601.15 $0.00 $601.15 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1465452 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/31/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6554985 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12089434 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/04/2023 - | $627.93 $0.00 $627.93 | - - - | Description : Due To Firm Memo : 4/4: Travel to LA- Depo of Neurosurgeon Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/26/2023 - | $16.24 $0.00 $16.24 | - - - | Description : Due To Firm Memo : No Rush Charge Imaging, LLC; Invoice #NRC01807911 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/19/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 8741644 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/30/2022 - | $700.00 $0.00 $700.00 | - - - | Description : Due To Firm Memo : |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Zimmermann, Polly G.; Castillo v. Lin, et al. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 06/07/2023 - | $667.15 $0.00 $667.15 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1624559 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 11/03/2022 - | $19,260.00 $0.00 $19,260.00 | - - - | Description : Due To Firm Memo : Persky, R.N., Georgia; Castillo v. Lin (10.31.22) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 08/13/2020 - | $2,000.00 $0.00 $2,000.00 | - - - | Description : Due To Firm Memo : Ostovar, M.D., Herald; Retainer Fee Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 07/22/2021 - | $150.00 $0.00 $150.00 | - - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Invoice- 7/2/21 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 06/14/2023 - | $659.00 $0.00 $659.00 | - - - | Description : Due To Firm Memo : Esquire Deposition Solutions, LLC; Invoice #INV2471521 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 02/26/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 7469336 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 08/27/2021 - | $146.64 $0.00 $146.64 | - - - | Description : Due To Firm Memo : DEPO IN KINGMAN, AZ Code : DTF Note : $12.24 FOOD $134.40 (120 MILES EACH WAY =240 @.56/M) |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 11/20/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6969665 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffman, LLP | - | 09/17/2020 - | $78.90 $0.00 $78.90 | - - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006845 Code : DTF |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/22/2021 - | $173.21 $0.00 $173.21 | - - - | Description : Due To Firm Memo : No Rush Charge Imaging Inc.; Invoice #NRC01805303 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 02/16/2023 - | $1,000.00 $0.00 $1,000.00 | - - - | Description : Due To Firm Memo : Tadakamalla, M.D., Ashvin K.; Invoice dated 2/3/23. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/06/2021 - | $1,200.00 $0.00 $1,200.00 | - - - | Description : Due To Firm Memo : Zimmermann, Polly G.; Castillo v. Lin, et al.-review Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/08/2022 - | $9,775.00 $0.00 $9,775.00 | - - - | Description : Due To Firm Memo : Fish, MD, MPH, David E.; Invoice 11/30/2022 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/17/2020 - | $103.90 $0.00 $103.90 | - - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006838 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 08/04/2022 - | $870.95 $0.00 $870.95 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1558953 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 04/28/2023 - | $157.20 $0.00 $157.20 | - - - | Description : Due To Firm Memo : 4/28 Travel to Kingman, AZ (Depo of Parents) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/17/2020 - | $83.90 $0.00 $83.90 | - - - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006839 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12092465 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/06/2023 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 12090246 Code : DTF |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/18/2023 - | $1,171.10 $0.00 $1,171.10 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1618754 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 12/08/2022 - | $9,775.00 $0.00 $9,775.00 | - - - | Description : Due To Firm Memo : Fish, MD, MPH, David E.; Invoice 11/18/2021 (Castillo) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/27/2022 - | $2,000.00 $0.00 $2,000.00 | - - - | Description : Due To Firm Memo : Hewell, M.D., Galen Brett; Deposition Fee (Castillo v. Lin, et al) Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/13/2022 - | $326.30 $0.00 $326.30 | - - - | Description : Due To Firm Memo : Esquire Deposition Solutions, LLC; Invoice #INV2085562 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/08/2022 - | $1,031.95 $0.00 $1,031.95 | - - - | Description : Due To Firm Memo : Litigation Services and Technologies of Nevada LLC; Invoice #1566004 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 01/12/2021 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 7213697 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 05/18/2023 - | $1,105.10 $0.00 $1,105.10 | - - - | Description : Due To Firm Memo : Esquire Deposition Solutions, LLC; Invoice #INV2484637 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/11/2022 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 10165756 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/01/2020 - | $281.60 $0.00 $281.60 | - - - | Description : Due To Firm Memo : 6558946 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/08/2020 - | $3.50 $0.00 $3.50 | - - - | Description : Due To Firm Memo : 6590765 Code : DTF |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/15/2020 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 6621387 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 02/03/2022 - | $12,000.00 $0.00 $12,000.00 | - | Description : Due To Firm Memo : D&R Park, Inc., Care of Don Young Park, M.D.; Re: Castillo v. Lin, et al. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/08/2020 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 6751387 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/15/2022 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 10036349 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 06/22/2022 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 10078047 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/08/2021 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 8513716 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 10/13/2022 - | $375.00 $0.00 $375.00 | - | Description : Due To Firm Memo : Esquire Deposition Solutions, LLC; Invoice #2304935 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 07/05/2022 - | $3.50 $0.00 $3.50 | - | Description : Due To Firm Memo : 10136633 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 02/16/2023 - | $2,370.00 $0.00 $2,370.00 | - | Description : Due To Firm Memo : Persky, R.N., Georgia; Invoice dated 1/31/23. Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/17/2020 - | $45.00 $0.00 $45.00 | - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006836 Code : DTF |
| Jesse Castillo | Due To Firm Miscellaneous | Atkinson, Watkins, & Hoffmann, LLP | - | 09/10/2020 - | $68.90 $0.00 $68.90 | - | Description : Due To Firm Memo : Legal Process Service; Inv# 2006843 Code : DTF |

Burk Injury Lawyers

| Code | From | To | Provider | Lien | Memo | Total | Due | Notes | Trans |
|---|---|---|---|---|---|---|---|---|---|
| CASEEXP | 2/26/2021 | 2/26/2021 | Advocate Capital, Inc. | ☑ | | $4,246.55 | $0.00 | ☐ | ☐ |
| CASEEXP | 2/14/2022 | 2/14/2022 | Bakkenson & Associates | ☐ | Retainer Expert - Voc Rehab | $3,000.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 3/31/2022 | 3/31/2022 | Bakkenson & Associates | ☐ | Expert Report | $2,290.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 3/2/2022 | 3/2/2022 | Bakkenson & Associates | ☐ | Inv # 3416 | $420.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 9/29/2020 | 9/29/2020 | ChartSwap | ☐ | Radiology Specialists | $10.60 | $0.00 | ☐ | ☐ |
| CASEEXP | 10/22/2020 | 10/22/2020 | ChartSwap | ☐ | Fremont Emergency Services | $10.60 | $0.00 | ☐ | ☐ |
| CASEEXP | 3/8/2021 | 3/8/2021 | ChartSwap | ☐ | Innova Emergency | $24.25 | $0.00 | ☐ | ☐ |
| CASEEXP | 10/16/2020 | 10/16/2020 | Ciox Health | ☐ | Valley View Medical Center | $35.20 | $0.00 | ☐ | ☐ |
| CASEEXP | 9/12/2023 | 9/12/2023 | Ciox Health | ☐ | Inv # 0323567904 | $2.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 4/1/2021 | 4/1/2021 | District Court | ☐ | Complaint Copy | $72.10 | $0.00 | ☐ | ☐ |
| CASEEXP | 9/12/2023 | 9/12/2023 | District Court | ☐ | | $10.50 | $0.00 | ☐ | ☑ |
| CASEEXP | 2/14/2022 | 2/14/2022 | FedEx | ☐ | Expert Check to Bakkenson & Associates | $42.70 | $0.00 | ☐ | ☐ |
| CASEEXP | 4/7/2022 | 4/7/2022 | FedEx | ☐ | Expert Check to Bakkenson & Associates | $45.50 | $0.00 | ☐ | ☐ |
| CASEEXP | 10/16/2020 | 10/16/2020 | GLB Insurance Group of Nevada | ☐ | Cost Bond - Check #0783 | $100.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 11/4/2020 | 11/4/2020 | Jeffrey Gross Billing Company | ☐ | Record Review | $3,675.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/21/2021 | 7/21/2021 | Kingman Regional Medical Center | ☐ | | $15.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/14/2022 | 7/14/2022 | MED-R | ☐ | Northern AZ Medical | $63.21 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/26/2022 | 7/26/2022 | MED-R | ☐ | Hanger Prosthetics & Orthotics | $52.80 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/27/2023 | 7/27/2023 | MED-R | ☐ | Northern AZ Medical | $59.10 | $0.00 | ☐ | ☐ |
| CASEEXP | 8/3/2023 | 8/3/2023 | MED-R | ☐ | Kingman Regional | $50.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/31/2023 | 7/31/2023 | Paramount Focus Group LLC | ☐ | | $7,210.00 | $0.00 | ☐ | ☑ |
| CASEEXP | 7/21/2021 | 7/21/2021 | Physicians Management Solutions,... | ☐ | | $15.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 11/22/2022 | 11/22/2022 | Smith Economics Group, LTD | ☐ | | $7,000.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 6/26/2023 | 6/26/2023 | Smith Economics Group, LTD | ☐ | | $1,594.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/15/2020 | 7/15/2020 | Steingart Orthopedics PC | ☐ | Med Records Review | $2,700.00 | $0.00 | ☐ | ☐ |
| CASEEXP | 9/21/2020 | 9/21/2020 | Steingart Orthopedics PC | ☐ | #2020-479/Review of Affidavit | $300.00 | $0.00 | ☐ | ☐ |

Burk Injury Lawyers

| Code | From | To | Provider | Lien | Memo | Total | Due | Notes | Trans |
|---|---|---|---|---|---|---|---|---|---|
| CASEEXP | 6/10/2020 | 6/10/2020 | The Patriot Law Firm Corp. | ☐ | File Set Up | $200.00 | $200.00 | ☐ | ☐ |
| CASEEXP | 1/13/2021 | 1/13/2021 | The Spine & Brain Institute | ☐ | | $19.20 | $0.00 | ☐ | ☐ |
| CASEEXP | 7/21/2021 | 7/21/2021 | Walgreens | ☐ | | $16.73 | $0.00 | ☐ | ☐ |

Jessica Bocanegra

# EXHIBIT 5

Electronically Filed
7/12/2022 5:00 PM
Steven D. Grierson
CLERK OF THE COURT

1   **TAC**
    JOHN F. BEMIS, ESQ.
2   Nevada Bar No. 9509
    ATKINSON WATKINS & HOFFMANN, LLP
3   10789 W. Twain Ave., Suite 100
    Las Vegas, NV  89135
4   Telephone: 702-562-6000
    Facsimile: 702-562-6066
5   Email: jbemis@awhlawyers.com

6   CHRISTOPHER D. BURK, ESQ.
    Nevada Bar No. 8976
7   THE PATRIOT LAW FIRM CORP.
    2350 West Charleston Blvd, Suite 202
8   Las Vegas, NV 89102
    Telephone: 702-901-0889
9   Facsimile: 702-623-5113
    Email: chris@thepatriotlawfirm.com
10  *Attorneys for Plaintiff*

11
                        **DISTRICT COURT**
12
                    **CLARK COUNTY, NEVADA**
13

14
    JESSE CASTILLO, an individual,          CASE NO.:   A-20-820371-C
15                                          DEPT. NO.:  XXVI
               Plaintiff,
16
    v.
17
    CHARLES SHIN LIN, MD, individually;     **THIRD AMENDED COMPLAINT**
18  RAZMIG GARO KRATLIAN, MD,
    individually; ABRILL M. JONES, MD,
19  individually; JAMES S. FORAGE, MD,
    individually; INPATIENT CONSULTANTS
20  OF NEVADA, INC.; FREMONT
    EMERGENCY SERVICES, LTD.; SUNRISE   **ARBITRATION EXEMPTION CLAIMED:**
21  HOSPITAL AND MEDICAL CENTER, LLC            **Medical Malpractice**
    d/b/a SUNRISE HOSPITAL AND MEDICAL
22  CENTER; DUKE FORAGE ANSON
    NEUROSURGICAL, LLP; and DOES I
23  through X, inclusive; and ROE
    CORPORATIONS I through X, inclusive,
24
               Defendants.
25

26  . . .

27  . . .

28  . . .

### THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff, JESSE CASTILLO, individually (hereinafter referred to as "Plaintiff"), by and through his attorneys of record, JOHN F. BEMIS, ESQ., of the law firm of ATKINSON WATKINS & HOFFMANN, LLP, and CHRISTOPHER D. BURK, ESQ., of THE PATRIOT LAW FIRM CORP., and for his Third Amended Complaint on file herein alleges as follows:

### I.

### STATEMENT OF FACTS

1.     Plaintiff, JESSE CASTILLO, individually, is, and at all times mentioned herein was a resident of the County of Mohave, State of Arizona.

2.     Defendant CHARLES SHIN LIN, MD (hereinafter referred to as "LIN"), is, and at all time mentioned herein was a resident of the State of Nevada, and a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapters 630 and 449.

3.     Defendant RAZMIG GARO KRATLIAN, MD (hereinafter referred to as "KRATLIAN"), is, and at all time mentioned herein was a resident of the State of Nevada, and a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapters 630 and 449.

4.     Defendant, SUNRISE HOSPITAL AND MEDICAL CENTER, LLC (hereinafter referred to as SUNRISE) is, and was at all times relevant hereto, a foreign limited liability company, and upon information and belief, is and was licensed to do business in Nevada as a medical care provider pursuant to NRS Chapter 449, and is vicariously liable for its employees, agents and/or servants and their actions.

5.     Defendant, ABRILL M. JONES (hereinafter referred to as JONES), is, and was at all times relevant hereto, a resident of the State of Nevada, and a physician licensed to practice medicine in the State of Nevada pursuant to NRS Chapters 630 and 449.

6.     Defendant, INPATIENT CONSULTANTS OF NEVADA, INC. (hereinafter referred to as IPC), is, and was at all times relevant hereto, a foreign corporation, licensed to practice

- 2 -

medicine in the State of Nevada pursuant to NRS 449, and is vicariously liable for its employees, agents and/or servants and their actions.

7.    Defendant, FREMONT EMERGENCY SERVICES, LTD (hereinafter referred to as FREMONT), is, and was at all times relevant hereto, a domestic professional corporation, licensed to practice medicine in the State of Nevada pursuant to NRS 449, and is vicariously liable for its employees, agents and/or servants and their actions.

8.    Upon information and belief, Defendant JONES was an employee and/or agent of Defendant, IPC.

9.    Upon information and belief, Defendant KRATLIAN was an employee and/or agent of Defendant, IPC.

10.    Upon information and belief, Defendant LIN was an employee and/or agent of Defendant, FREMONT.

11.    Upon information and belief, Defendants JONES, KRATLIAN, LIN and FORAGE were employees and/or agents of Defendant, SUNRISE.

12.    That the names and capacities of Defendants DOES I through X, inclusive, and ROE Corporations I through X, inclusive, whether individual, corporate, associate, or otherwise, of are unknown to the Plaintiff at the time of the filing of this complaint and Plaintiff therefore sues said Defendants by such fictitious name.  Plaintiff will ask for leave of court to file an Amended Complaint to insert the true names of the Defendants when the true name has been ascertained.

13.    Defendant, SUNRISE, has a nondelegable duty to Plaintiff, arising from their special relationship with physicians.

14.    Defendant, SUNRISE, is vicariously liable for its employees, agents and/or servants and their actions, including but not limited to, physicians, surgeons, registered nurses, licensed practical nurses, pharmacists, registered technicians, certified nursing assistants, certified technicians, attendants, physicians assistants or paramedical personnel at Sunrise Hospital, who were treating Plaintiff.

15.    At all times relevant herein, Defendants, and each of them, were the agents, ostensible agents, servants, employees, employers, partners, co-owners and/or joint ventures of

- 3 -

each other and of their co-defendants, and were acting within the course, scope and purpose of their employment, agency, ownership and/or joint ventures and be reason of such relationships the Defendants, and each of them, are vicariously liable, jointly and severally responsible and liable for the acts and/or omissions of their co-Defendants.

**II.**

**GENERAL ALLEGATIONS**

16.    Plaintiff's claims arise out of the errors and omissions of Defendant SUNRISE, and/or their employees, agents and/or servants, including but not limited to its nursing staff, Defendant JONES, Defendant FORAGE, Defendant LIN, and their failure to properly monitor, inform, diagnose, document, timely intervene, use the chain of command, monitor diagnostic studies, follow proper guidelines, and ensure the timely surgical intervention for Plaintiff who was being transferred due to a suspicion of cauda equina.

17.    Plaintiff's claims arise out of the errors and omissions of Defendant LIN, and his failure to properly monitor, inform, diagnose, document, timely intervene, use the chain of command, monitor diagnostic studies, follow proper guidelines, and ensure the timely surgical intervention for Plaintiff who was being transferred due to a suspicion of cauda equina.

18.    Plaintiff's claims arise out of the errors and omissions of Defendant JONES, and her failure to properly monitor, inform, diagnose, document, timely intervene, use the chain of command, monitor diagnostic studies, follow proper guidelines, and ensure the timely surgical intervention for Plaintiff who was being transferred due to a suspicion of cauda equina.

19.    Plaintiff's claims arise out of the errors and omissions of Defendant KRATLIAN, and his failure to properly monitor, inform, diagnose, document, timely intervene, use the chain of command, monitor diagnostic studies, follow proper guidelines, and ensure the timely surgical intervention for Plaintiff who was being transferred due to a suspicion of cauda equina.

20.    Plaintiff's claims arise out of the errors and omissions of Defendant FORAGE, and his failure to properly monitor, inform, diagnose, document, timely intervene, use the chain of command, monitor diagnostic studies, follow proper guidelines, and ensure the timely surgical intervention for Plaintiff who was being transferred due to a suspicion of cauda equina.

- 4 -

21.    On, or about August 31, 2019, Plaintiff began experiencing minor pain and spasms in his lower back.

22.    On September 1, 2019, Plaintiff began suffering from urinary incontinence in the morning.

23.    On September 1, 2019, Plaintiff was brought via ambulance to the Emergency Department at Kingman Regional Medical Center (KRMC), with severe back pain and urinary incontinence.

24.    Physicians at KRMC suspected spinal cord compression and transferred Plaintiff to SUNRISE for an immediate MRI and neurosurgery consultation.

25.    Plaintiff arrived, via ambulance, at SUNRISE on September 1, 2019.

26.    Plaintiff was treated in the Emergency Department by LIN.

27.    Defendant LIN ordered a STAT MRI from the Emergency Department, and admitted Plaintiff to the care of Defendants KRATLIAN and JONES.

28.    Defendant LIN did not obtain a neurosurgery consultation.

29.    Plaintiff was transferred from the Emergency Department directly to the MRI suite.

30.    The MRI technicians performed their standard questionnaire at approximately 6:15 pm.  The questionnaire discovered that Plaintiff had some metal in his left ankle.  This required consultation with a radiologist before the MRI could be started.

31.    Prior to a discussion with the radiologist, Sunrise Hospital MRI technicians ordered a transporter to take Plaintiff to his room at 6:14 pm, without accomplishing the MRI.

32.    After ordering a transporter to take Plaintiff to his hospital room, without an MRI, Sunrise Hospital MRI technician had a telephone discussion with Dr. Hewell, a radiologist.

33.    Sunrise Hospital policy allows for radiologist to order any additional studies to obtain all necessary information for optimal care of the patient.

34.    Dr. Hewell was present at Sunrise Hospital on September 1, 2019.

35.    Dr. Hewell ordered a left ankle X-ray to determine whether an MRI could be accomplished.

. . .

- 5 -

36.     Sunrise Hospital MRI technicians failed to enter the X-ray order from Dr. Hewell.

37.     Sunrise Hospital MRI technicians did not advise any healthcare provider that Dr. Hewell ordered an X-ray of the left ankle.

38.     Upon transfer to his hospital room, Plaintiff was still pending the MRI.

39.     Plaintiff's transfer from the MRI suite to his room was marked "completed" at 6:39 pm.

40.     Sunrise Hospital intra-hospital communication device log indicates that an MRI technician requested the floor nurse to get X-rays ordered at 7:47 pm.

41.     The Sunrise Hospital floor nurse requested an order for X-rays of the left ankle at 9:06 pm.

42.     The nurse practitioner working with KRATLIAN and JONES provided the floor nurse with an order for X-Rays of the left ankle shortly after the request.

43.     The Sunrise Hospital floor nurse did not enter the order for left ankle X-rays.

44.     On September 2, 2019, Defendant JONES ordered an X-ray of the left ankle at approximately 1:05 pm.

45.     On September 2, 2019, Plaintiff was brought back to the MRI suite at or about 5:30 pm.

46.     On September 2, 2019, Defendant JONES ordered Plaintiff be kept NPO, nothing by mouth, pending the MRI results based on the potential for emergency neurosurgery.

47.     On September 2, 2019, the radiology critical call log indicates that the floor nurse was called at 10:08 pm with results cauda equina compression at the L2-L3 level.

48.     The floor nurse did not relay that information to any physician.

49.     On September 3, 2019, Defendant JONES ordered Plaintiff be NPO, pending the MRI results based on the potential for emergency neurosurgery.

50.     On September 3, 2019, Plaintiff was given food and drink by Sunrise staff.

51.     On September 3, 2019, Defendant JONES reviewed Plaintiff's MRI results.

52.     On September 3, 2019, Defendant JONES ordered a neurosurgical consult due to the cauda equina compression revealed on the MRI.

- 6 -

53.     Plaintiff received a neurosurgical consult on September 3, 2019.

54.     Plaintiff was unable to undergo surgery on September 3, 2019, based on Sunrise staff failing to keep him NPO.

55.     On September 3, 2019, Sunrise Hospital floor nurse sent an intrahospital message to "Leadership" stating "Critical MRI missed."

56.     Sunrise Hospital did not conduct any investigation into the numerous errors related to the care and treatment of Plaintiff.

57.     Sunrise Hospital did not discipline any employee related to the errors in their care and treatment of Plaintiff.

58.     Sunrise Hospital's failure to investigate this incident ratifies the conduct of its employees.

59.     Dr. Forage performed surgery on September 4, 2019, decompressing the spinal cord compression.

60.     Plaintiff suffers from partial paralysis due to the failure to timely address his cauda equina and perform an immediate surgery.

61.     Defendant LIN deviated from the acceptable standard of care by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation.  These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis.  *See* Declaration of Herald Ostovar, MD, attached hereto as **Exhibit 1**.

62.     At all times relevant herein, Defendant LIN was aware of the consequences of inadequate response to Plaintiff's critical condition did nothing to avoid the devastating consequences in conscious disregard for Plaintiff's health, safety and wellness.

63.     Defendant KRATLIAN deviated from the acceptable standard of care by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation.

- 7 -

These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis. *See* Declaration of Herald Ostovar, MD, attached hereto as **Exhibit 1**. *See* Declaration of Michael Steingart, D.O. attached hereto as **Exhibit 2.**

64.    At all times relevant herein, Defendant KRATLIAN was aware of the consequences of inadequate response to Plaintiff's critical condition did nothing to avoid the devastating consequences in conscious disregard for Plaintiff's health, safety and wellness.

65.    Defendant JONES deviated from the acceptable standard of care by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation. These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis. *See* Declaration of Herald Ostovar, MD, attached hereto as **Exhibit 1**. *See* Declaration of Michael Steingart, D.O. attached hereto as **Exhibit 2.**

66.    At all times relevant herein, Defendant JONES was aware of the consequences of inadequate response to Plaintiff's critical condition did nothing to avoid the devastating consequences in conscious disregard for Plaintiff's health, safety and wellness.

67.    Defendant SUNRISE, through its nurses/agents/employees/physicians deviated from the acceptable standard of care by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation, and surgery. Moreover, SUNRISE deviated from the acceptable standard of care by failing to adhere to the policies, procedures and protocols and failing to initiate appropriate nursing intervention for a patient with suspected cauda equina. These failures caused partial paralysis and other injuries to Plaintiff.

. . .

. . .

. . .

. . .

1

**III.**

2

**FIRST CAUSE OF ACTION**
**PROFESSIONAL NEGLIGENCE**
3                                  **(As Against Defendants LIN)**

4         68.     Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 67 of

5 this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

6         69.     Defendant LIN owed a duty of care to Plaintiff to render medical care and treatment

7 in a professional manner consistent with the standard of care prescribed in his medical field.

8         70.     Defendant LIN fell below the standard of care by falling below his respective

9 professional degree of learning, skill and exercise of good judgment.

10         71.     Defendant LIN fell below the standard of care by, among other things, by failing to

11 properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and

12 respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating

13 condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation.

14 These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's

15 partial paralysis.

16         72.     As a direct result of Defendant LIN's acts and omissions, Plaintiff suffered partial

17 paralysis.

18         73.     As a direct and proximate result of Defendant LIN's negligence, Plaintiff endured

19 extreme pain, suffering and emotional distress.

20         74.     As a direct and proximate result of Defendant LIN's negligence, Plaintiff incurred

21 medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not

22 known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof

23 at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

24         75.     As a further direct and proximate result of Defendant LIN's negligence, Plaintiff

25 will incur future loss of income in an amount in excess of $15,000.

26         76.     As a further direct and proximate result of Defendant LIN's negligence, Plaintiff

27 will require care for his activities of daily living, for his lifetime.

28 . . .

77.     As a further direct and proximate result of Defendant LIN's negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seeks reimbursement for attorneys' fees and costs.

78.     At all times relevant herein, Defendant LIN, was the agent, servant or employee of Defendant FREMONT, and at all times herein mentioned, were acting within the scope of employment with the knowledge, permission and consent of their employer(s), Defendant FREMONT. Therefore, employer(s) are responsible and liable for all of its employee/ servant/agent's negligent conduct set forth herein under the theory of respondeat superior.

79.     In support of their claims against Defendant LIN, Plaintiff has attached the Declaration of Herald Ostovar, MD, attached hereto as **Exhibit 1**.

**IV.**

**SECOND CAUSE OF ACTION**
**PROFESSIONAL NEGLIGENCE**
**(As Against Defendant KRATLIAN)**

80.     Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 79 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

81.     Defendant KRATLIAN owed a duty of care to Plaintiff to render medical care and treatment in a professional manner consistent with the standard of care prescribed in his medical field.

82.     Defendant KRATLIAN fell below the standard of care by falling below his respective professional degree of learning, skill and exercise of good judgment.

83.     Defendant KRATLIAN fell below the standard of care by, among other things, by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation. These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis.

84.     As a direct result of Defendant KRATLIAN's acts and omissions, Plaintiff suffered partial paralysis.

85.    As a direct and proximate result of Defendant KRATLIAN's negligence, Plaintiff endured extreme pain, suffering and emotional distress.

86.    As a direct and proximate result of Defendant KRATLIAN's negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

87.    As a further direct and proximate result of Defendant KRATLIAN's negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

88.    As a further direct and proximate result of Defendant KRATLIAN's negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

89.    As a further direct and proximate result of Defendant KRATLIAN's negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seek reimbursement for attorneys' fees and costs.

90.    At all times relevant herein, Defendant KRATLIAN, was the agent, servant or employee of Defendant IPC, and at all times herein mentioned, were acting within the scope of employment with the knowledge, permission and consent of their employer(s), Defendant IPC. Therefore, employer(s) are responsible and liable for all of its employee/ servant/agent's negligent conduct set forth herein under the theory of respondeat superior.

91.    In support of their claims against Defendant KRATLIAN, Plaintiff has attached the Declaration of Herald Ostovar, MD, as **Exhibit 1**, and the Declaration of Michael Steingart, D.O. as **Exhibit 2**.

**V.**

**THIRD CAUSE OF ACTION**
**PROFESSIONAL NEGLIGENCE**
**(As Against Defendant JONES)**

92.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 91 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

. . .

93.    Defendant JONES owed a duty of care to Plaintiff to render medical care and treatment in a professional manner consistent with the standard of care prescribed in his medical field.

94.    Defendant JONES fell below the standard of care by falling below his respective professional degree of learning, skill and exercise of good judgment.

95.    Defendant JONES fell below the standard of care by, among other things, by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to obtain a neurosurgery consultation. These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis.

96.    As a direct result of Defendant JONES' acts and omissions, Plaintiff suffered partial paralysis.

97.    As a direct and proximate result of Defendant JONES' negligence, Plaintiff endured extreme pain, suffering and emotional distress.

98.    As a direct and proximate result of Defendant JONES' negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

99.    As a further direct and proximate result of Defendant JONES' negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

100.    As a further direct and proximate result of Defendant JONES' negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

101.    As a further direct and proximate result of Defendant JONES' negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seek reimbursement for attorneys' fees and costs.

102.    At all times relevant herein, Defendant JONES, was the agent, servant or employee of Defendant PLATINUM, and at all times herein mentioned, were acting within the scope of

employment with the knowledge, permission and consent of their employer(s), Defendant PLATINUM.  Therefore, employer(s) are responsible and liable for all of its employee/ servant/agent's negligent conduct set forth herein under the theory of respondeat superior.

103.    In support of their claims against Defendant JONES, Plaintiff has attached the Declaration of Herald Ostovar, MD, attached hereto as **Exhibit 1**, and the Declaration of Michael Steingart, D.O. as **Exhibit 2**.

**VI.**

**FOURTH CAUSE OF ACTION**
**PROFESSIONAL NEGLIGENCE**
**(As Against Defendant SUNRISE)**

104.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 103 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

105.    Defendant SUNRISE, its nurses/agents/employees/physicians owed a duty of care to Plaintiff to render medical care and treatment in a professional manner consistent with the standard of care prescribed in his medical field.

106.    Defendant SUNRISE, its nurses/agents/employees/physicians fell below the standard of care by falling below his respective professional degree of learning, skill and exercise of good judgment.

107.    Defendant SUNRISE, its nurses/agents/employees/physicians fell below the standard of care by, among other things, by failing to properly and adequately monitor the condition of Plaintiff by failing to properly evaluate and respond to his suspected cauda equina, by failing to address Plaintiff's critical, deteriorating condition, by failing to ensure a timely MRI, and by failing to ensure a timely neurosurgery consultation and timely take Plaintiff to surgery.  These failures caused severe delays in the only treatment for cauda equina and resulted in Plaintiff's partial paralysis.

108.    As a direct result of Defendant SUNRISE's acts and omissions, Plaintiff suffered partial paralysis.

109.    As a direct and proximate result of Defendant SUNRISE's negligence, Plaintiff endured extreme pain, suffering and emotional distress.

110.    As a direct and proximate result of Defendant SUNRISE's negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

111.    As a further direct and proximate result of Defendant SUNRISE's negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

112.    As a further direct and proximate result of Defendant SUNRISE's negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

113.    As a further direct and proximate result of Defendant SUNRISE's negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seek reimbursement for attorneys' fees and costs.

114.    In support of their claims against Defendant SUNRISE, Plaintiff has attached the Declaration of Herald Ostovar, MD as **Exhibit 1**, and the Declaration of Michael Steingart, D.O. as **Exhibit 2**.

## VII.

### FIFTH CAUSE OF ACTION
### VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
### (As Against Defendant SUNRISE)

115.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 114 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

116.    At all times relevant herein, all physicians, surgeons, registered nurses, licensed practical nurses, pharmacists, registered technicians, certified nursing assistants, certified technicians, attendants, physicians assistants, radiologists or paramedical personnel at Sunrise Hospital, who were treating Plaintiff, including but not limited to, Defendant LIN, Defendant JONES, Defendant KRATLIAN, DEFENDANT FORAGE, were the agents, servants or employees of Defendant SUNRISE, and at all times herein mentioned, were acting within the scope of employment with the knowledge, permission and consent of their employer(s), Defendant SUNRISE.  Therefore, employer(s) are responsible and liable for all of its employee/servant/agent's

- 14 -

negligent conduct set forth herein under the theory of respondeat superior.

117.    As a direct and proximate result of Defendants' negligence, Plaintiff endured extreme pain, suffering and emotional distress.

118.    As a direct and proximate result of Defendants' negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

119.    As a further direct and proximate result of Defendants' negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

120.    As a further direct and proximate result of Defendants' negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

121.    As a further direct and proximate result of Defendants' negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seeks reimbursement for attorneys' fees and costs.

## VIII.

### SIXTH CAUSE OF ACTION
### VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
### (As Against Defendant FREMONT)

122.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 121 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

123.    At all times relevant herein, Defendant LIN, was the agent, servant or employee of Defendant FREMONT, and at all times herein mentioned, were acting within the scope of employment with the knowledge, permission and consent of their employer(s), Defendant FREMONT.    Therefore, employer(s) are responsible and liable for all of its employee/ servant/agent's negligent conduct set forth herein under the theory of respondeat superior.

124.    As a direct and proximate result of Defendants' negligence, Plaintiff endured extreme pain, suffering and emotional distress.

125.    As a direct and proximate result of Defendants' negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not

known to Plaintiffs and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

126.    As a further direct and proximate result of Defendants' negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

127.    As a further direct and proximate result of Defendants' negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

128.    As a further direct and proximate result of Defendants' negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seeks reimbursement for attorneys' fees and costs.

**IX.**

**SEVENTH CAUSE OF ACTION**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(As Against Defendant IPC)**

129.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 128 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

130.    At all times relevant herein, Defendant KRATLIAN and Defendant JONES, were the agents, servants or employees of Defendant IPC, and at all times herein mentioned, were acting within the scope of employment with the knowledge, permission and consent of their employer(s), Defendant IPC. Therefore, employer(s) are responsible and liable for all of its employee/servant/agent's negligent conduct set forth herein under the theory of respondeat superior.

131.    As a direct and proximate result of Defendants' negligence, Plaintiff endured extreme pain, suffering and emotional distress.

132.    As a direct and proximate result of Defendants' negligence, Plaintiff incurred medical expenses and will incur lifelong medical expenses, the full extent of said expenses are not known to Plaintiff and leave is requested to this Court to amend this Complaint to conform to proof at the time of trial; Plaintiff has suffered general damages in an amount that is in excess of $15,000.

. . .

- 16 -

133.    As a further direct and proximate result of Defendants' negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

134.    As a further direct and proximate result of Defendants' negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

135.    As a further direct and proximate result of Defendants' negligence, Plaintiff was forced to retain the services of attorneys in this matter; and therefore, seeks reimbursement for attorneys' fees and costs.

**X.**

**EIGHTH CAUSE OF ACTION**
**GENERAL NEGLIGENCE**
**(As Against Defendant SUNRISE)**

136.    Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 135 of this Complaint and makes them a part of the instant cause of action as though fully set forth herein.

137.    Defendant SUNRISE, its nurses/agents/employees/physicians owed a duty of care to Plaintiff.

138.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by failing to enter orders received by physicians and nurse practitioners.

139.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by ordering Plaintiff be transferred from the MRI suite to his room before discussing his case with a radiologist on September 1. 2019.

140.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by failing to enter the order for left ankle X-rays received from Dr. Hewell on September 1, 2019.

141.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by failing to enter the order for left ankle X-rays received from Carson Gomez, APRN on September 1, 2019.

142.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by failing to call the physician upon learning of the critical MRI result on September 2, 2019.

143.    Defendant SUNRISE, its nurses/agents/employees breached its duty of care by failing to keep Plaintiff NPO on September 3, 2019, per Defendant JONES order.

144. As a direct result of Defendant SUNRISE's acts and/or omissions, Plaintiff faced a significant delay in his surgery which has resulted in permanent injuries.

145. As a proximate result of the negligence of the Defendant, Plaintiff incurred additional expenses, including hospital expenses, the full extent of said expenses are not known to Plaintiff and leave is requested of this Court to amend this Complaint to conform to proof at time of trial.

146. As a further direct and proximate result of Defendant's negligence, Plaintiff will incur future loss of income in an amount in excess of $15,000.

147. As a further direct and proximate result of Defendant's negligence, Plaintiff will require care for his activities of daily living, for his lifetime.

148. As a further proximate result of the negligence of the Defendant, Plaintiff was forced to retain the services of attorneys in this matter and therefore seeks reimbursement for attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For medical special damages and compensatory damages against Defendants, for an amount in excess of $15,000, plus pre-judgment and post-judgment interest thereon at the highest legal rate;

2. For an award of Plaintiff's attorneys' fees and costs; and

3. For such other and further relief as this Court deems just and proper.

DATED this __12th__ day of July, 2022.

ATKINSON WATKINS & HOFFMANN, LLP

*/s/ John F. Bemis, Esq.*
JOHN F. BEMIS, ESQ.
Nevada Bar No. 9509
10789 W. Twain Avenue, Suite 100
Las Vegas, NV 89135

CHRISTOPHER D. BURK, ESQ.
Nevada Bar No. 8976
THE PATRIOT LAW FIRM CORP.
2350 W. Charleston Blvd., Ste. 202
Las Vegas, NV 89102
*Attorneys for Plaintiff*

- 18 -

1

## **CERTIFICATE OF SERVICE**

2    I hereby certify that I am an employee of ATKINSON, WATKINS & HOFFMANN, LLP

3    and that on the _12th_ day of July, 2022, I caused to be served via Odyssey, the Court's mandatory

4    efiling/eservice system a true and correct copy of the document described herein.

5

6    **Document Served:    THIRD AMENDED COMPLAINT**

7

8    **Person(s) Served:**

9    Keith A. Weaver, Esq.                     Robert C. McBride, Esq.
      Nevada Bar No. 10271                       Nevada Bar No. 7082
10    Alissa Bestick, Esq.                       Chelsea R. Hueth, Esq.
      Nevada Bar No. 14979                       Nevada Bar No. 10904
11    LEWIS BRISBOIS BISGAARD &                  MCBRIDE HALL
      SMITH, LLP                                 8329 W. Sunset Rd., Ste. 260
12    6385 S. Rainbow Blvd., Ste. 600            Las Vegas, NV 89113
      Las Vegas, NV 89118                        *Attorneys for Defendants Razmig Garo*
13    *Attorneys for Defendants Charles Shin*    *Kratlian, MD, Abrill M. Jones, MD, and*
      *Lin, MD, and Fremont Emergency*           *Inpatient Consultants of Nevada, Inc.*
14    *Services, LTD.*

15    Michael E. Prangle, Esq.                   Christopher D. Burk, Esq.
      Nevada Bar No. 8619                        Nevada Bar No. 8976
16    Mari K. Schaan, Esq.                       THE PATRIOT LAW FIRM CORP.
      Nevada Bar No. 11268                       2350 West Charleston Blvd, Suite 202
17    HALL PRANGLE & SCHOONVELD,                 Las Vegas, NV 89102
      LLC                                        *Co-Counsel for Plaintiff*
18    1140 N. Town Center Dr., Ste. 350
      Las Vegas, NV 89144
19    *Attorneys for Defendant Sunrise Hospital*
      *and Medical Center, LLC d/b/a Sunrise*
20    *Hospital and Medical Center*

21

22                    _/s/ Erika Jimenez_
                       An Employee of ATKINSON WATKINS & HOFFMANN, LLP

23

24

25

26

27

28

EXHIBIT 1

John F. Bemis, Esq.
Battleborn Injury Lawyers
10789 W. Twain Avenue.
Las Vegas, NV 89135.

Dear Mr. Bemis,

I am an actively practicing, full-time, Board Certified, Emergency Medicine physician. my scope of practice has ranged from small, single coverage emergency departments to large multispecialty trauma centers and children's hospitals. I currently hold active medical licenses in multiple states, including CA, TX and CO.

As you are aware, I received my undergraduate degree from Cornell College. I went to medical school at St. George's University. I performed my residency at Spectrum-Butterworth Hospital in Grand Rapids, Michigan. I have worked as an emergency medicine physician from 2005 to present. For the last five years, I have worked at Scripps Memorial Hospital in Encinitas, CA. I am familiar with the standard of care of emergency medicine physicians, the standard of care for nursing staff executing the orders from emergency medicine physicians and the standard of care of attending or admitting physicians when taking over care of a patient with pending diagnostic study orders. I am familiar with the standard of care related to the ordering, executing and expediting of diagnostic studies for patients with suspected cauda equina.

I have been asked to review the records of Jesse Castillo, related to his September 1, 2019, transfer to Sunrise Hospital from Kingman Regional Medical Center. In short, Mr. Castillo was transferred to a higher level of care because of suspected cauda equina syndrome. He required an immediate MRI due to symptoms consistent with spinal cord compression, including significant lower extremity weakness and urinary retention.. Additionally, his condition required an immediate neurosurgery consult. Unfortunately, the care provided to Mr. Castillo was severely delayed and led to partial paralysis.

In reviewing the records, Sunrise Hospital, including the emergency medicine physician, Dr. Charles Lin, the emergency department nursing staff, the floor nursing staff and the attending physicians, Dr. Kratlian and Dr. Jones, fell below the standard of care as it relates to Mr. Castillo. Mr. Castillo was transferred to Sunrise Hospital on September 1, 2019. He was transferred to Sunrise for a higher level of care including an immediate MRI due to symptoms consistent with spinal cord compression. The MRI, ordered in the emergency department, was a STAT order. Despite the STAT MRI order, the emergency department, including nurses and physicians, did nothing to ensure the timely performance of the study. Further, Dr. Lin failed to obtain an immediate neurosurgery consultation.

Upon admission, the attending physicians and nursing staff ignored the emergent nature of Mr. Castillo's condition and failed to ensure a timely study was accomplished. Moreover, the attending physicians failed to obtain a timely neurosurgery consultation.

As a result, Mr. Castillo had a severely delayed diagnosis of cauda equina, and now suffers from partial paralysis.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.


_____                    __8/21/2020_____
Herald Ostovar, MD                                      DATE

EXHIBIT 2

Christopher D. Burk, Esq.
THE PATRIOT LAW FIRM CORP.
2350 West Charleston Blvd. #202
Las Vegas, Nevada 89102

Dear Mr. Burk,

I am a board certified orthopedic surgeon. I received my medical degree from North Texas University. I completed an internship with Garden City Hospital in Garden City Michigan, with a focus on internal medicine and general surgery. I went on to residency at Garden City Hospital for orthopedic surgery. I am fellowship trained in orthopedic sports medicine from the University of Arizona. I have been a practicing orthopedic surgeon for over 25 years. I am familiar with the standard of care related to the diagnosis, treatment and surgical intervention related to patients suspected of having cauda equina. I am familiar with the standard of care for physicians and nurses related to the ordering, executing and expediting of diagnostic studies for patients with suspected cauda equina.

I have been asked to review the records of Jesse Castillo, related to his September 1, 2019, transfer to Sunrise Hospital from Kingman Regional Medical Center. The history reported was that Mr. Castillo lifted a heavy object, and felt back pain radiating down his leg. He required a walker. Mr. Castillo was transferred to Sunrise for a higher level of care, suspected spinal cord compression and potential surgery. Upon arriving to Sunrise, Mr. Castillo's care was delayed.

Upon reviewing the medical records from Sunrise hospital, it is clear that the care and treatment of Mr. Castillo fell below the standard of care. Sunrise Hospital, including neurosurgeon Dr. Forage, the emergency department nursing staff, the floor nursing staff and the hospitalist physicians, Dr. Jones and Dr. Kratlian, fell below the standard of care in their treatment of Mr. Castillo. Mr. Castillo required an immediate MRI, neurosurgery consult and surgery. That was the known reason for his transfer.

The Hospital, including nursing staff and the above-named physicians, failed to ensure that Mr. Castillo timely obtained the MRI. Instead, it was not completed until over 24 hours after admission. Thereafter, there were no efforts to expedite care. Dr. Forage waiting until September 4, a full 3 days after admission to consult and perform surgery. There were no efforts from the remaining providers to ensure the required immediate consultation. As a result, Mr. Castillo remains partially paralyzed.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Michael A. Steingart, D.O.

8/23/ _____
DATE

# EXHIBIT 6

Electronically Filed
07/11/2022 12:32 PM

CLERK OF THE COURT

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**
**-oOo-**

MARILYN MARTYN,                    )
                                   )
            Plaintiff,             )
                                   )
vs.                                )    CASE NO.:  A-10-625101-C
                                   )    DEPT. NO.:  XXX
RUSSELL NEVINS, M.D.; R. NEVINS, M.D., )
LTD., a Nevada Professional Corporation; )
NEV ADA ORTHOPEDIC & SPINE CENTER, )
LLP, a Nevada Limited Liability Partnership; )
DOES 1 through 10, inclusive;  ROE  )    **ORDER RE: PLAINTIFF'S**
ENTITIES 1 through 10, inclusive,  )    **MOTION FOR ATTORNEY'S**
                                   )    **FEES AND COSTS**
            Defendants.            )
_____ )

**INTRODUCTION**

The above-referenced matter came on for a hearing in Dept. 30 on the Court's Chambers Calendar on April 29, 2022, with regard to the Plaintiff's Motion for Attorney's Fees and Costs.   Pursuant to the Administrative Orders of the Court, as well as EDCR 2.23, this matter may be decided with or without oral argument.  The Court has determined that it would be appropriate to decide the matter on the pleadings, and consequently, this Order issues.

**FACTUAL AND PROCEDURAL HISTORY**

This case stems from an alleged medical malpractice/professional negligence claim against Dr. Nevins, and his related business entities, due to a procedure he performed on Marilyn Martyn in approximately 2009.  In 2010, Martyn filed a Complaint, alleging that Defendant breached the required standard of care and caused her damages.  The matter proceeded to Trial, and resulted in a verdict in favor of the Defendants.  Plaintiff moved for a new trial, arguing that juror misconduct prejudiced her substantial rights.  The Court granted the Motion for New Trial, and denied Defendants' Motion to Reconsider.  The Nevada Court of Appeals remanded the case to the District Court and indicated that the Court abused its discretion in not conducting an evidentiary hearing to evaluate the veracity of Martyn's motion.  Subsequently, the

1

Court conducted an evidentiary hearing and again granted Martyn's Motion for New Trial. Defendants again moved for reconsideration, which the Court denied, and Defendants again appealed. This time, the Nevada Court of Appeals affirmed, concluding that the Court acted within its sound discretion. Accordingly, the case went to trial a second time in October of 2021, this time resulting in a verdict in favor of the Plaintiff. A Judgment on Jury Verdict was filed 1/20/22, and a Notice of Entry was filed the following day on 1/21/22. Plaintiff thereafter filed a Memorandum of Costs on 1/25/22, and the Defendants filed a Motion to Retax Costs on 1/28/22. The Court has issued a separate Order with regard to the Defendant's Motion to Retax Costs, wherein the Court awarded the Plaintiff the total sum of $47,859.23 in costs, plus statutory interest. That Order took into consideration the arguments set forth in the instant Motion for Fees and Costs, and resolves the issue of costs, such that the only issue remaining before the Court is the requested attorney's fees. Plaintiff filed the instant Motion for Attorney's Fees and Costs on 2/25/22. An Opposition was filed by Defendants on 3/11/22, and Plaintiff filed a Reply on 4/22/22.

**SUMMARY OF LEGAL AND FACTUAL ARGUMENTS**

Based upon the verdict, combined with the requested costs and interest on the costs, Plaintiff has requested attorneys' fees in the amount of $1,684,504.49. This request is based upon a rejected offer of judgment for $1,000,000.00, which was later reduced to $750,000.00. Plaintiff issued a total of four offers of judgment to Defendants: (1) $1,000,000 on June 3, 2014; (2) $1,000,000 on May 14, 2015; (3) $1,000,000 on December 19, 2019; and (4) $750,000 on August 13, 2021. Combined, the offices of Gerald Gillock, Craig Murphy, and Claggett & Sykes, contractually agreed with the Plaintiff to recover attorneys' fees in the contingent amount of 50%. The amount of attorneys' fees requested, is based on a total requested recovery amount, including Plaintiff's requested costs of $170,531.06, and prejudgment interest on those costs of $42,075.57. Since the Court awarded substantially less in costs, the 50% contingency amount would also be less.

Plaintiff argues that because she prevailed at Trial, and beat her multiple offers of judgment, she is "entitled to recover costs and reasonable attorney fees incurred after making the offer of judgment." *Logan v. Abe*, 131 Nev. 260, 262, 350 P.3d 1139,

1140 (2015) (emphasis added); *Beattie v. Thomas*, 99 Nev. 579, 588, 668 P.2d 268, 274 (1983); *Waddell v. L.V.R.V. Inc.*, 122 Nev. 15, 24, 125 P.3d 1160, 1165–1166 (2006).

Plaintiff argues that in *O'Connell v. Wynn Las Vegas, LLC*, 429 P.3d 664, 670 (Nev. Ct. App. 2018), the Nevada Court of Appeals held that billing records are not required to support an award of attorney fees. Indeed, the Court of Appeals explained that "attorney fees can be awarded when they are based upon contingency fee agreements." *Id.* at 666.  *O'Connell* also cited with approval other authorities allowing a consideration of the type of case, the length of the trial, the difficulty of the case, the numbers, and types of witnesses, as well as other relevant factors to determine a reasonable attorney fee. *Id.* at 671 (citing *McNeel v. Farm Bureau Gen. Ins. Co.,* 795 N.W.2d 205, 220 (Mich. App. 2010); *Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 62 Cal. Rptr. 3d 665, 676 (Ct. App. 2007) (concluding that the trial court did not abuse its discretion in an attorney fees award case, in part, because, despite a lack of billing records, the *Mardirossian* attorneys had personal knowledge of the legal work they performed and "each testified at length concerning the work he or she performed, the complexity of the issues and the extent of the work that was required")). Plaintiff points out that *O'Connell* explained that attorneys who work on a contingent basis take risks under such fee agreements, which should factor into the award of fees. *Id.* at 671 (citing *King v. Fox*, 7 N.Y.3d 181, 851 N.E.2d 1184, 1191–1192, 818 N.Y.S.2d 833 (N.Y. 2006).

Plaintiff suggests that in considering Plaintiff's requested attorney fees of 50% of the total judgment, the Court should consider the enormous risk undertaken by Plaintiff's attorneys in this case. Additionally, the *O'Connell* court noted that contingency fee agreements level the playing field for those who "cannot afford an attorney who bills at an hourly rate to secure legal representation." *Id.* at 671 (citing *King*, 851 N.E.2d at 1191).

Plaintiff argues that since O'Connell was decided over three years ago, other courts have unanimously cited it with approval. See, e.g., *Katz v. Incline Vill. Improvement Dist., Order of Affirmance*, Dkt. No. 71493, at *8 (Nev. 2019) (unpublished) ("[W]e conclude that the district court relied on sufficient evidence to calculate a reasonable amount for Brooke's services.") (citing *O'Connell*, 134 Nev. at 557–558, 429 P.3d at 670 (holding that billing records are not required to support an

award of attorney fees so long as the court can calculate a reasonable fee)). More recently, the En Banc Nevada Supreme Court cited *O'Connell* with approval in *Capriati Constr. Corp., Inc. v. Yahyavi*, 137 Nev., Adv. Op. 69 (Nov. 10, 2021). Consequently, Plaintiff argues that this Court should be guided by *O'Connell* and *Yahyavi* in awarding Plaintiff her requested attorney fees of 50% of the total judgment.

Plaintiff correctly asserts that in determining whether to award attorney fees under NRCP 68 based upon a rejected offer of judgment when the plaintiff is the offeror, a district court must evaluate the following factors:

> (1) whether the defendant's defense was brought in good faith;
> (2) whether the plaintiffs' offer of judgment was reasonable and in good faith in both its timing and amount;
> (3) whether the defendant's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and
> (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252, 955 P.2d 661, 673 (1998) (citing *Beattie v. Thomas*, 99 Nev. 579, 588–589, 668 P.2d 268, 274 (1983)).

Plaintiff argues that the Defendants' defense that they did nothing wrong, was not an argument in good faith, especially considering that an unintended burn caused the damage to Plaintiff's radial nerve. Plaintiff argues that her Offers of Judgment to Defendants were reasonable and in good faith, both in timing and amount. Plaintiff notes that Defendants had opportunities to settle and accept the Plaintiff's Offers of Judgment, in 2014, 2015, 2019, and 2021. Plaintiff argues that the Defendants' decision to reject the Offers of Judgment were either grossly unreasonable or in bad faith. Especially because Dr. Nevins finally conceded that he had no defenses. Finally, Plaintiff argues that the fees sought are reasonable and justified in amount.

The Plaintiff argues that the Nevada Supreme Court has recently clarified that attorney fees requested under NRCP 68 based upon a contingency fee agreement can be awarded in the full amount requested because "the contingency fee does not vest until the plaintiff prevails." *Yahyavi*, 137 Nev., Adv. Op. 69, at *7. The Court reasoned as follows:

> We now clarify that a district court may award the entire contingency fee as post-offer attorney fees under NRCP 68 because the contingency fee does not vest until the client prevails. See *Grasch v. Grasch*, 536 S.W.3d 191, 194 (Ky. 2017) (holding that "the attorney does not possess a vested

4

right to the actual contingent fee itself until the case is won or settled");
see also *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex.
2006) (holding the same). A contingency fee is contingent on the plaintiff
prevailing, which will happen only *after* an offer of judgment is rejected—
never before. Our holding is consistent with public policy justifications
supporting contingency-fee agreements, see *O'Connell*, 134 Nev. at 559-
60, 429 P.3d at 671-72, as the contingency-fee-based award properly
serves as a punishment for rejecting a reasonable offer of judgment, see
*MEI-GSR Holdings [LLC v. Peppermill Casinos, Inc.]*, 134 Nev. 235, []
245, 416 P.3d 249, [] 258 (explaining that one purpose of NRCP 68 is to
punish parties for not accepting a reasonable offer of judgment).

*Id.* at *9–10 (italics in original).

Plaintiff argues that her requested attorney fees are reasonable in light of the
*Brunzell* factors, as outlined in *O'Connell* and *Yahhavi*. To determine the
reasonableness of the amount of Plaintiff's requested attorney fees, Nevada case law
requires this Court to weigh the four *Brunzell* factors: (1) qualities of the advocates:
ability, training, education, experience, professional standing, and skill; (2) the
character of the work: difficulty, intricacy, importance, time, skill required, and
responsibility imposed; (3) the work actually performed: skill, time, and attention; and
(4) the result: whether the attorney was successful and the benefits derived. See
*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349–350, 455 P.2d 31, 33 (1969).

Plaintiff argues that Jerry Gillock practices primarily in medical malpractice
cases, he has done over 300 jury trials, and is known as a fierce advocate for his clients.
He is AV rated, and a well respected attorney. Plaintiff argues that Craig Murphy has
been licensed in Nevada since 1990, is a board certified personal injury specialist.
Michael Coggeshall works with Jerry Gillock, and has since he graduated from Boyd
Law School in 2017. Micah Echols heads up Claggett & Sykes appellate division, and
has handled over 250 civil appellate matters. David Snyder joined Claggett & Sykes in
2021 as an appellate attorney.

Plaintiff argues that the issues in this matter were complex and intricate. The
Plaintiff argues that the Court has observed firsthand the work performed by the
attorneys, and knows that the Plaintiff's team of attorneys have spent thousands of
hours litigating this case since it was filed in 2010. Finally, Plaintiff argues that as for
the result, the verdict speaks for itself.

Plaintiff argues that she is entitled to post-judgment interest on the entire amount of her award of fees, costs, and interest.

Defendants argue against the requested fees, contending that Plaintiff is seeking fees from the commencement of this litigation, through two trials, (including the first trial where the verdict was in favor of the Defendants). Additionally, Defendants argue that Plaintiff's requested 50% is contrary to Nevada law.

Defendants argue that even the O'Connell case cited by the Plaintiff, indicates that "Ultimately a party seeking attorney fees based on a contingency fee agreement must provide or point to substantial evidence of counsel's efforts to satisfy the *Beattie* and *Brunzell* factors." See *O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 562, 2018 Nev. App. LEXIS 6, *24, 429 P.3d 664, 673, 134 Nev. Adv. Rep. 67, 2018 WL 4178139. Further, in *O'Connell*, the Nevada Court of Appeals noted that "...substantial evidence of the time reasonably spent on this case..." was needed to be considered by the district court in determining whether to award attorneys' fees. *Id.*

Defendants argue that under NRCP 68, a party is limited to recovery of his or her post-offer attorney's fees. Defendants contend that offers of judgment made prior to the verdict for the Defendants, are irrelevant. They contend that they were reasonable in relying on the history of this matter, and consequently, it was not bad faith or gross negligence to reject the Plaintiff's offers. The purpose of Offers of Judgment is not to force a defendant to forego a legitimate defense.

Defendants further argue that Plaintiff's requested fees are not reasonable or justified in amount. If Plaintiff believed the case was only worth $750,000.00, as they previously offered, then $1.9 million should not have been expended by the Plaintiff's attorneys. Defendants argue that Plaintiff has failed to provide substantial justification for $1.9 million in attorneys' fees. Defendants argue that Plaintiff's only justification for such a large amount of attorneys' fees is the 50% contingency fee agreements, but such agreements are directly in violation of Nevada statutes. NRS 7.095 indicates the following:

> 1. An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of:
> (a) Forty percent of the first $50,000 recovered;
> (b) Thirty-three and one-third percent of the next $50,000 recovered;

(c) Twenty-five percent of the next $500,000 recovered; and
(d) Fifteen percent of the amount of recovery that exceeds $600,000.
2. The limitations set forth in subsection 1 apply to all forms of recovery, including, without limitation, settlement, arbitration and judgment.
3. For the purposes of this section, "recovered" means the net sum recovered by the plaintiff after deducting any disbursements or costs incurred in connection with the prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and general and administrative expenses incurred by the office of the attorney are not deductible disbursements or costs..."

NRS § 7.095.

Defendants contend that the Nevada State Bar has enforced this statute and disciplined members of the bar who have attempted to contract for and collect a fee in excess of the statutorily provided amount. In the fee agreements applicable to this case, the Plaintiff specifically waived the application of NRS 7.095, but Defendants argue that just because lawyers can find people to pay what they charge does not abrogate NRS 7.095.

Defendants further argue that pursuant to Nevada Rules of Professional Conduct 1.5, "...A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." See Nev. Rules of Prof'l Conduct 1.5.

Defendants ultimately argue that because Plaintiff's request for 50% of the recovery violates NRS 7.095, it is unreasonable and cannot be awarded.

Finally, Defendants argue that even if the Plaintiff were entitled to fees, the fees must be limited to those incurred "after" the Plaintiff's Offers of Judgment.

In reply, Plaintiff suggests that even if the Court were to apply NRS 7.095, the full amount of attorneys' fees should be awarded against the Defendant business entities, and limit the fees awarded against Dr. Nevins. Plaintiff argues that the Nevada Supreme Court has already rejected the Defendants' argument that attorneys' fees are limited to post-offer fees, in contingency cases. *Capriati Constr. Corp., Inc., v. Yahyavi*, 498 P.3d 226 (Nev. 2021). Plaintiff also argues that the Court has rejected Defendants' argument that the Plaintiff's offers of judgment somehow became invalid following the first trial. Plaintiff is the prevailing party in the litigation for all purposes. *Valley Elec. Ass'n v. Overfield*, 121 Nev. 7, 10, 106 P.3d 1198, 1200 (2005); *In re Estate & Living Tr. of Rose Miller*, 125 Nev. 550, 553, 216 P.3d 239, 242 (2009).

Plaintiffs again argue that the Defendants maintained their defense in bad faith, particularly because Dr. Nevins admitted that he knew he had fractured Plaintiff's bone and that it was displaced, which admission differed from Dr. Nevins' operative reports stating just the opposite.

Plaintiff argues that the amount requested was justified, based on the *Brunzell* factors. Plaintiff suggests that the amount of $1,684,504.49 in attorneys' fees is very low for nearly 12 years of legal work.

Plaintiff argues that the Defendants' suggestion that hourly invoices are required to justify a contingency fee, was specifically rejected in *O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 551, 429 P.3d 664, 666 (Ct.App.2018), wherein the Court stated, "We conclude that district courts cannot deny attorney fees because an attorney, who represents a client on a contingency fee basis, does not submit hourly billing records." *Id.*

With regard to the argument relating to NRS 7.095, Plaintiff suggests that Defendants do not have standing to interfere with Plaintiff's private contracts with her attorneys, and NRS 7.095 does not provide such standing. Further, Plaintiff has specifically and knowingly waived the application of NRS 7.095. Finally, even if the Court were to apply NRS 7.095, which became effective on 1/1/20, the statute defines "provider of health care" as a "physician . . .", but does not apply to business entities.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NRCP 68 provides the following

### Rule 68.    Offers of Judgment

(a) The Offer.    At any time more than 21 days before trial, any party may serve an offer in writing to allow judgment to be taken in accordance with its terms and conditions. Unless otherwise specified, an offer made under this rule is an offer to resolve all claims in the action between the parties to the date of the offer, including costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees.

(b) Apportioned Conditional Offers.    An apportioned offer of judgment to more than one party may be conditioned upon the acceptance by all parties to whom the offer is directed.

(c) Joint Unapportioned Offers.

(1) Multiple Offerors.    A joint offer may be made by multiple offerors.

(2) Offers to Multiple Defendants.    An offer made to multiple defendants will invoke the penalties of this rule only if:

8

(A)  there is a single common theory of liability against all the offeree defendants, such as where the liability of some is entirely derivative of the others or where the liability of all is derivative of common acts by another; and

(B)  the same entity, person, or group is authorized to decide whether to settle the claims against the offerees.

(3)  Offers to Multiple Plaintiffs.    An offer made to multiple plaintiffs will invoke the penalties of this rule only if:

(A)  the damages claimed by all the offeree plaintiffs are solely derivative, such as where the damages claimed by some offerees are entirely derivative of an injury to the others or where the damages claimed by all offerees are derivative of an injury to another; and

(B)  the same entity, person, or group is authorized to decide whether to settle the claims of the offerees.

(d)  Acceptance of the Offer and Dismissal or Entry of Judgment.

(1)  Within 14 days after service of the offer, the offeree may accept the offer by serving written notice that the offer is accepted.

(2)  Within 21 days after service of written notice that the offer is accepted, the obligated party may pay the amount of the offer and obtain dismissal of the claims, rather than entry of a judgment.

(3)  If the claims are not dismissed, at any time after 21 days after service of written notice that the offer is accepted, either party may file the offer and notice of acceptance together with proof of service. The clerk must then enter judgment accordingly. The court must allow costs in accordance with NRS 18.110 unless the terms of the offer preclude a separate award of costs. Any judgment entered under this section must be expressly designated a compromise settlement.

(e)  Failure to Accept Offer.    If the offer is not accepted within 14 days after service, it will be considered rejected by the offeree and deemed withdrawn by the offeror. Evidence of the offer is not admissible except in a proceeding to determine costs, expenses, and fees. The fact that an offer is made but not accepted does not preclude a subsequent offer. With offers to multiple offerees, each offeree may serve a separate acceptance of the apportioned offer, but if the offer is not accepted by all offerees, the action will proceed as to all. Any offeree who fails to accept the offer may be subject to the penalties of this rule.

(f)  Penalties for Rejection of Offer.

(1)  In General.    If the offeree rejects an offer and fails to obtain a more favorable judgment:

(A)  the offeree cannot recover any costs, expenses, or attorney fees and may not recover interest for the period after the service of the offer and before the judgment; and

(B)  the offeree must pay the offeror's post-offer costs and expenses, including a reasonable sum to cover any expenses incurred by the offeror for each expert witness whose services were reasonably necessary to prepare for and conduct the trial of the case, applicable interest on the judgment from the time of the offer to the time of entry of

9

the judgment and reasonable attorney fees, if any be allowed, actually incurred by the offeror from the time of the offer. If the offeror's attorney is collecting a contingent fee, the amount of any attorney fees awarded to the party for whom the offer is made must be deducted from that contingent fee.

        (2)  Multiple Offers.    The penalties in this rule run from the date of service of the earliest rejected offer for which the offeree failed to obtain a more favorable judgment.

        (g)  How Costs, Expenses, Interest, and Attorney Fees Are Considered.    To invoke the penalties of this rule, the court must determine if the offeree failed to obtain a more favorable judgment. If the offer provided that costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees, would be added by the court, the court must compare the amount of the offer with the principal amount of the judgment, without inclusion of costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees. If a party made an offer in a set amount that precluded a separate award of costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees, the court must compare the amount of the offer, together with the offeree's pre-offer taxable costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees, with the principal amount of the judgment.

        (h)  Offers After Determination of Liability.    When the liability of one party to another has been determined by verdict, order, or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which has the same effect as an offer made before trial if it is served within a reasonable time not less than 14 days before the commencement of hearings to determine the amount or extent of liability.

[Amended; effective March 1, 2019.]

     This Court finds and concludes that NRCP 68 applies here, as the Plaintiff submitted multiple Offers of Judgment to the Defendants, and thereafter prevailed at Trial, in an amount in excess of any of the Offers of Judgment.  Pursuant to subsection (f), "the offeree must pay the offeror's post-offer costs and expenses, including a reasonable sum to cover any expenses incurred by the offeror for each expert witness whose services were reasonably necessary to prepare for and conduct the trial of the case, applicable interest on the judgment from the time of the offer to the time of entry of the judgment and reasonable attorney fees, if any be allowed, actually incurred by the offeror from the time of the offer."

     This Court also acknowledges that the Nevada Supreme Court has recently clarified that attorney fees requested under NRCP 68 based upon a contingency fee

agreement can be awarded in the full amount requested because "the contingency fee does not vest until the plaintiff prevails." *Yahyavi*, 137 Nev., Adv. Op. 69, at *7. The Court reasoned as follows:

> We now clarify that a district court may award the entire contingency fee as post-offer attorney fees under NRCP 68 because the contingency fee does not vest until the client prevails. See *Grasch v. Grasch*, 536 S.W.3d 191, 194 (Ky. 2017) (holding that "the attorney does not possess a vested right to the actual contingent fee itself until the case is won or settled"); see also *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006) (holding the same). A contingency fee is contingent on the plaintiff prevailing, which will happen only *after* an offer of judgment is rejected— never before. Our holding is consistent with public policy justifications supporting contingency-fee agreements, see *O'Connell*, 134 Nev. at 559- 60, 429 P.3d at 671-72, as the contingency-fee-based award properly serves as a punishment for rejecting a reasonable offer of judgment, see *MEI-GSR Holdings [LLC v. Peppermill Casinos, Inc.],* 134 Nev. 235, [] 245, 416 P.3d 249, [] 258 (explaining that one purpose of NRCP 68 is to punish parties for not accepting a reasonable offer of judgment).

*Id*. at *9–10 (italics in original).

In determining whether to award attorney fees under NRCP 68 based upon a rejected offer of judgment when the plaintiff is the offeror, a district court must evaluate the following factors:

> (1) whether the defendant's defense was brought in good faith;
> (2) whether the plaintiffs' offer of judgment was reasonable and in good faith in both its timing and amount;
> (3) whether the defendant's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and
> (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252, 955 P.2d 661, 673 (1998) (citing *Beattie v. Thomas,* 99 Nev. 579, 588–589, 668 P.2d 268, 274 (1983)). This Court finds and concludes that the claims brought by Plaintiff, and the defenses asserted by the Defendants were brought in good faith.  The Court finds and concludes that the Plaintiff's Offers of Judgment were reasonable and in good faith, in both timing and their amounts.  The Court does not find that the Defendants' decisions to reject the offers was in bad faith or grossly unreasonable, especially in light of the fact that the Defendants prevailed in the first Trial.  With regard to the reasonableness of the requested fees, the Court must conduct a *Brunzell* analysis.

11

To determine the reasonableness of the amount of Plaintiff's requested attorney fees, Nevada case law requires this Court to weigh the four *Brunzell* factors: (1) qualities of the advocates: ability, training, education, experience, professional standing, and skill; (2) the character of the work: difficulty, intricacy, importance, time, skill required, and responsibility imposed; (3) the work actually performed: skill, time, and attention; and (4) the result: whether the attorney was successful and the benefits derived. See *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349–350, 455 P.2d 31, 33 (1969).

In considering the qualities of the attorneys, including abilities, training, education, experience, professional standing, and skill, the Court finds that particularly with regard to Gerald Gillock (lead counsel), this weighs in favor of Plaintiff. The other attorneys involved with Plaintiff's case were also very competent, experienced, etc. The Court finds and concludes that, as with most cases involving medical malpractice, the issues in this matter were complex and intricate. The Court has observed firsthand, much of the effort and work expended by the attorneys on both sides, as this litigation has spanned approximately 10 years, and the Court knows that attorneys on both sides have spent hundreds, maybe thousands, of hours on behalf of their respective clients. With regard to the result, the Court acknowledges that after an initial verdict in favor of the Defendants, and an Appeal, the second verdict was in favor of the Plaintiff. Consequently, the ultimate result favors the Plaintiff. With regard to the amount of the requested attorneys' fees requested by the Plaintiff, the Court finds that a 50% contingency agreement is and has been standard in the community for many years, and the Court finds it to be reasonable.

Based upon the Court's holding in *Yahyavi*, this Court finds that an award of the full 50% contingency fee would be appropriate. The Court then has to consider NRS 7.095, and whether the limitations contained therein apply to this case.

NRS 7.095 provides the following:

**NRS 7.095 Limitations on contingent fees for representation of persons in certain actions against providers of health care. [Effective January 1, 2022.]**
    1.    An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of:
    (a) Forty percent of the first $50,000 recovered;

(b)   Thirty-three and one-third percent of the next $50,000 recovered;

(c)   Twenty-five percent of the next $500,000 recovered; and

(d)   Fifteen percent of the amount of recovery that exceeds $600,000.

2.     The limitations set forth in subsection 1 apply to all forms of recovery, including, without limitation, settlement, arbitration and judgment.

3.     For the purposes of this section, "recovered" means the net sum recovered by the plaintiff after deducting any disbursements or costs incurred in connection with the prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and general and administrative expenses incurred by the office of the attorney are not deductible disbursements or costs.

4.     As used in this section:

(a)   "Professional negligence" means a negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death. The term does not include services that are outside the scope of services for which the provider of health care is licensed or services for which any restriction has been imposed by the applicable regulatory board or health care facility.

(b)   "Provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractic physician, doctor of Oriental medicine, holder of a license or a limited license issued under the provisions of chapter 653 of NRS, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees.

(Added to NRS by 2004 initiative petition, Ballot Question No. 3; A 2011, 1510; 2019, 2709; 2021, 534, effective January 1, 2022)

The statute indicates that an attorney cannot "collect" a contingent fee in excess of the limitations contained in the statute, in an action "against a provider of health care based upon professional negligence." Although the Court questions whether the legislature's intent was really to carve out a doctor's business entities, the Plaintiff is correct that the statute defines a "provider of health care," and does not include a doctor's professional business entities. The Court notes that NRS 41A.017 defines "provider of health care" to include a "physicians' professional corporation or group practice that employs any such person and its employees." Because a physician's professional corporation or group practice is not included in the definition of "provider of health care" under NRS 7.095, the Court must conclude that the omission was intentional, and the limitations contained in the statute would not apply against a

doctor's "professional corporation or group practice." Consequently, the limitations contained in NRS 7.095 would apply to Dr. Nevins individually, but not against the other Defendants.

The total verdict in favor of the Plaintiff and against the Defendants was in the amount of $5,403,336.59. After applying NRS 41A.035 (the cap on non-economic damages), the verdict was reduced to $2,599,736.59. Pre-Judgment interest was calculated and included in the Judgment, in the amount of $556,665.75, for a total Judgment in the amount of $3,156,402.34. Even with the statutory reduction and without including the interest, the Plaintiff still beat all of her Offers of Judgment. The Court finds and concludes that the Plaintiff was clearly the "prevailing party." Although the Defendants argue that the Court should consider the prior Trial, in which the Defendants prevailed, once a new trial is granted, that verdict is of no effect. The verdict which currently applies to this case is in favor of the Plaintiff and against the Defendants.

In applying NRS 7.095 as it relates to the Plaintiff's verdict against Dr. Nevins, Plaintiff's counsel would be entitled to the following (including prejudgment interest, but excluding any costs or post-judgment interest):

    (a)  Forty percent of the first $50,000 recovered;  ($20,000.00)

    (b)  Thirty-three and one-third percent of the next $50,000 recovered; ($16,666.50)

    (c)  Twenty-five percent of the next $500,000 recovered; ($125,000.00)

    (d)  Fifteen percent of the amount of recovery that exceeds $600,000. ($2,556,402.34 x 15% = $383,460.351)

**Total: $545,126.85**

With regard to the Plaintiff's recovery against Dr. Nevins individually, attorneys' fees would be limited to $545,126.85. With regard to Dr. Nevins' business entities, however, the limitations of NRS 7.095 would not apply, and the Plaintiff's attorneys would be entitled to 50% of all amounts recovered. 50% of the verdict amount ($3,156,402.34), which includes pre-judgment interest, but excludes costs, would be $1,578,201.17. The Court acknowledges that the attorneys' fees would actually be

calculated on the above-referenced total, plus the costs awarded, and any additional statutory interest which has accrued.

**CONCLUSION/ORDER**

Based upon the foregoing, and good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorneys' Fees and Costs is hereby **GRANTED** to the extent consistent with the foregoing. Plaintiff is awarded Costs as set forth in a separate Order filed concurrently herewith, in the amount of $47,859.23. Plaintiff is awarded attorneys' fees of 50% of all amounts recovered, which the Court has calculated as $1,578,201.17 (which is 50% of $3,156,402.34, including pre-judgment interest, but excluding costs), such amount is recoverable against Dr. Nevins' business entities, and due to the application of NRS 7.095 the Plaintiff cannot collect more than $545,126.85 of that amount from Dr. Nevins individually. Plaintiff would be entitled to 50% of the total recovery, including interest on the costs, but the Court will allow the parties to calculate that interest, and the fee amount may be slightly different, once it includes interest on the costs awarded.

The Court requests that counsel for Plaintiff prepare and process a Notice of Entry with regard to this Order.

Dated this 11th day of July, 2022

JERRY A. WIESE II
DEPARTMENT XXX

59B D96 14CF CB3F
Jerry A. Wiese
District Court Judge

15

# EXHIBIT 7

## <u>ADDENDUM TO MEDICAL MALPRACTICE FEE AGREEMENT</u>

THE FEE PROVISION SET FORTH IN THE FOREGOING CONTRACT WILL BE APPLICABLE UNLESS THE STATUTES CURRENTLY GOVERNING MEDICAL MALPRACTICE FEES ARE UPHELD BY THE NEVADA SUPREME COURT OR THE UNITED STATES FEDERAL COURTS AND IT IS DETERMINED THAT ITS PROVISIONS CONCERNING FEES CANNOT BE WAIVED.

THE UNDERSIGNED, AFTER FULL EXPLANATION, IS VOLUNTARILY WAIVING THE RECENTLY REVISED NEVADA STATUTES GOVERNING MEDICAL MALPRACTICE CASES IN ENVADA, SPECIFICALLY, N.R.S. 7.095 AS IT APPLIES TO ATTORNEYS' FEES.

IN THE EVENT THAT N.R.S. 7.095 IS UPHELD AND WAIVER OF THIS STATUTE IS DISALLOWED, THE FEE AGREEMENT WILL BE AS PRESCRIBED IN N.R.S. 7.095, AS FOLLOWS:

1.    40% OF THE FIRST $50,000;
2.    1/3 OF THE NEXT $50,000;
3.    25% OF THE NEXT $500,000; AND
4.    15% OF THE AMOUNT OF RECOVERY THAT EXCEEDS $600,000.

THE PERCENTAGES SET FORTH ABOVE AND IN THE FEE AGREEMENT ARE CALCUALTED AFTER DEDUCTION OF COSTS INCURRED IN PROSECUTING THIS CLAIM.

IN THE EVENT THAT N.R.S. 7.095 IS UPHELD BY THE COURTS, ATTORNEYS SPECIFICALLY RESERVE THE RIGHT TO WITHDRAW FROM FURTHER REPRESENTATION OF CLIENTS.

DATED THIS _5_ DAY OF <u>OCTOBER</u> , 20<u>22</u>.

AGREED TO BY:

Jesse Lee Castillo (Oct 5, 2022 16:45 PDT)
**Client Signature**


JESSE CASTILLO
**Printed Name**

# Castillo_ 02b_Fee Agreement Add (MEDMAL ONLY)

Final Audit Report                                                                    2022-10-05

| | |
|---|---|
| Created: | 2022-10-05 |
| By: | Erika Jimenez (erika@awhlawyers.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAsGdvU0_RJxjhCYwt24qOW5FS4alcJB2l |

## "Castillo_ 02b_Fee Agreement Add (MEDMAL ONLY)" History

📄 Document created by Erika Jimenez (erika@awhlawyers.com)
2022-10-05 - 11:10:30 PM GMT- IP address: 68.225.3.190

📧 Document emailed to arizoakid928@gmail.com for signature
2022-10-05 - 11:11:50 PM GMT

📄 Email viewed by arizoakid928@gmail.com
2022-10-05 - 11:19:09 PM GMT- IP address: 24.156.27.80

✍ Signer arizoakid928@gmail.com entered name at signing as Jesse Lee Castillo
2022-10-05 - 11:45:58 PM GMT- IP address: 24.156.27.80

✍ Document e-signed by Jesse Lee Castillo (arizoakid928@gmail.com)
Signature Date: 2022-10-05 - 11:45:59 PM GMT - Time Source: server- IP address: 24.156.27.80

✔ Agreement completed.
2022-10-05 - 11:45:59 PM GMT

🔲 **Adobe Acrobat Sign**

# EXHIBIT 8

Electronically Filed
2/27/2019 10:08 AM
Steven D. Grierson
CLERK OF THE COURT

1   **ORD**
    DENNIS M. PRINCE, ESQ.
2   Nevada Bar No. 5092
    TRACY A. EGLET, ESQ.
3   Nevada Bar No. 6419
    THOMAS N. BECKOM, ESQ.
4   Nevada Bar No.: 12554
5   **EGLET PRINCE**
    400 South 7th Street, 4th Floor
6   Las Vegas, Nevada 89101
    E-Mail: eservice@egletlaw.com
7   Tel.:   (702) 450-5400
8   Fax:   (702) 450-5451

9               **IN THE EIGHTH JUDICIAL DISTRICT COURT**
10                      **CLARK COUNTY, NEVADA**

11  ERIC   MENDOZA   and   MICHELLE        CASE NO. A-14-708740-C
    MENDOZA, parents and guardians of        DEPT. NO. XXIV
12  CHARLES MENDOZA, a minor; ERIC
    MENDOZA,   individually;   MICHELLE      **ORDER FROM THE EVIDENTIARY**
13  MENDOZA, individually,                       **HEARING APPROVING**
14                                                **ATTORNEY'S FEES**
                    Plaintiffs,
15
16  vs.

17  JEFFREY   L.   JOHNSON,   M.D.,   an
    individual; RADIOLOGY SPECIALISTS,
18  LTD, a Nevada Professional Corporation;
    SUNRISE HOSPITAL AND MEDICAL
19  CENTER, LLC, a Delaware Corporation;
    YET   UNKNOWN   EMPLOYEES   OF
20  SUNRISE   HOSPTIAL   AND   MEDICAL
    CENTER, LLC; SRINIVAS HALTHORE,
21  M.D., an individual; HALTHORE JOHNS
    PEDIATRIC          NEUROLOGY
22  ASSOCIATES,   LTD.,   a   Nevada
    Professional Corporation; JOHN DOES I
23  through  X;  ROE  CORPORATIONS  I
    through X, inclusive,
24
25
26                  Defendants.
27
28  /.../.../

On October 29, 2018 at 9:00am this Court conducted an evidentiary hearing concerning whether Eric and Michelle Mendoza (hereinafter the "Mendozas") knowingly, voluntarily, and intelligently waived the attorney's fee limitations contained in NRS §7.095 for medical malpractice actions on behalf of their minor child, Charlie. This Court previously held that NRS §7.095 can be waived in a medical malpractice action if such waiver is knowing, voluntary, and intelligent. This Court heard testimony from four (4) witnesses during the half day evidentiary hearing including: Eric and Michelle Mendoza (Charlie's parents), attorney Keith Galliher (the Plaintiff's attorney), and Deena Mooney (Mr. Galliher's paralegal). Based on the testimony presented to this Court, this Court hereby makes the following factual findings and issues the following orders.

## I.
## FINDINGS OF FACT

**A.    Overview Of The Case**

1.    On July 28, 2013, Charlie and his parents, Eric and Michelle, had the devastating experience of Charlie being diagnosed with a brain tumor. His parents immediately admitted Charlie to the hospital on July 29, 2013, where Charlie spent 5 weeks in the ICU with Eric and Michelle Mendoza (collectively the "Mendozas") undergoing the difficult burden for any parent of wondering whether or not Charlie would survive.

2.    After their harrowing ordeal, and during Charlie's difficult rehabilitation from brain surgery, the Mendozas began to suspect that Charlie's diagnosis had been mishandled at some point by his physicians as he had been seeing a neurologist for quit some time.

3.    Ultimately, it was discovered that Charlie's brain tumor had been visible in a 2009 MRI yet for reasons entirely unclear no one identified, diagnosed, or treated the brain tumor for 4 years.

4.   Based on their initial suspicions that were ultimately confirmed, the Mendozas contacted Francis Stewart, a California Attorney, at the beginning of 2014 to discuss a possible medical malpractice action.

5.   Mr. Stewart referred the Mendozas to the Galliher Law Firm in order to investigate their suspicions regarding Charlie's misdiagnosis. The Mendozas, however, waited almost a year before contacting the Galliher Law Firm on September 16, 2014 and this resulted in an initial consultation that was mere weeks before the statute of limitations ran for Charlie's complicated medical malpractice claim.  As further noted below, in light of this truncated timeframe, Mr. Galliher was compelled to work up this medical malpractice claim faster than he ever had before in his 40 year career in order to perform his due diligence and file the Mendoza's case.

6.   After Mr. Galliher, through long hours of very hard work, determined that the Mendoza's had a viable medical malpractice case, Mr. Galliher met with the Mendoza's a second time on October 17, 2014 to finalize their case for filing.

7.   At this meeting, the Mendozas executed a Retainer Agreement providing that the Galliher Law Firm would receive thirty-three and one third percent (33 1/3%) of any gross recovery if the case settled without filing a lawsuit and 40% if a lawsuit was filed.

8.   On October 20, 2014, the Mendozas filed a Medical Malpractice Action on behalf of their minor son, Charlie, against the named Defendants in this action through the Galliher Law Firm a mere three (3) days after their final consultation and mere weeks after they presented to the Galliher Law Firm.

9.   As this extremely difficult and contested case progressed, on April 13, 2015, Eglet Prince associated into this medical malpractice action, with the Galliher Law Firm, on behalf of the Mendozas to assist Charlie in obtaining a successful litigation outcome.

3

10.    Ultimately after the Complaint in this matter was filed, the Mendozas finally received the positive outcome for Charlie they were desperately seeking, through the hard work of their attorneys, and the matter was settled between the Plaintiffs and the Defendants and a Stipulation and Order for dismissal was filed on May 25, 2018 for a substantial amount.

11.    In light of the successful outcome and consistent with Nevada Law on May 10, 2018, Eglet Prince filed a petition to compromise Charlie's claims and also requested that 40% of the overall settlement be dispersed to Charlie's lawyers in compensation for their hard work.

12.    In regards to medical malpractice actions however, NRS §7.095 provides for limitations on the amount an attorney may charge as a contingency fee in a medical malpractice case and states in relevant part:

"An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon profession negligence in excess of:

(a) Forty percent of the first $50,000 recovered;

(b) Thirty-three and one-third percent of the next $50,000 recovered;

(c) Twenty-five percent of the next $500,000 recovered and

(d) Fifteen percent of the amount of recovery that exceeds $600,000.00"

13.    The Mendozas ultimately objected to the 40% disbursement through a letter to this Court stating they had been unaware of NRS §7.095.

14.    The attorneys for the Mendozas however objected and stated that the Mendozas had been informed of the attorney's fee limitations for medical malpractice actions and furthermore had waived the fee limitations in NRS §7.095 through their conduct.

4

15.  On this basis on July 2, 2018, this Honorable Court ordered that pursuant to NRS §7.095, $296,666.67 out of requested fees of $600,000.00, at a 40% contingency fee rate, were to be paid to the attorneys with a remaining balance of $303,333.33 to be held in the trust account for Eglet Prince pending briefing on where or not NRS §7.095 could be waived by Eric and Michelle Mendoza on behalf of Charlie.

16.  After substantial briefing on this subject on August 10, 2018, this Honorable Court ruled that NRS §7.095 could be waived by Eric and Michelle Mendoza on behalf of Charlie under Nevada law.

17.  However a dispute arose between Eric and Michelle Mendoza and Charlie's attorney as to whether or not the waiver of NRS §7.095 actually occurred and as such this Honorable Court set an evidentiary hearing on whether or not there was a knowing, voluntary, and intelligent waiver of NRS §7.095 by Eric and Michelle Mendoza on behalf of Charlie.

18.  After hearing the testimony of Eric and Michelle Mendoza, Keith Galliher, and Deena Mooney at the October 29, 2018 evidentiary hearing, the Court hereby determines following occurred.

**B.    Testimony Of Keith Galliher, Esq**

19.  This Court notes that Keith Galliher is an experienced trial lawyer whom has only handled a small number of medical malpractice cases through out his career.

20.  Eric and Michelle Mendoza approached Mr. Galliher to evaluate Charlie's medical malpractice case less than two (2) months before the statute of limitations ran for Charlie's medical malpractice claim.  Mr Galliher testified that this was the fastest he had ever worked up a medical malpractice claim given the time constraints.

5

21.    Mr. Galliher further testified that he explained to the Mendozas that attorney's fees were capped in Nevada through the following testimony:

"Q. Can you explain to me your recollection of your conversation with them.
A. Same conversation I had with <u>every</u> medical malpractice case I accept...

        ...

As far as the attorney's fee statute is concerned, I told them we have a statute in the State that limits attorney's fees in these types of case. However, no attorney that I know, including myself, will accept a case based on the statutory fee because medical malpractice cases are among the most difficult to win, and they cost a tremendous amount of money to litigate, the results are very, very uncertain ..."(Emphasis Added)

22.    Mr. Galliher also testified that it was custom and practice in Nevada that experienced medical malpractice attorneys would only take medical malpractice cases for a 40% contingency fee and further that it was his firm's custom and practice to explain the attorney fee limitations to his clients.

23.    Mr. Galliher testified that the Mendozas retained the Galliher Law Firm and signed his 40% retainer even after the fee limitation was explained to them with no objections to the 40% fee and no indication they did not understand.

24.    This Court notes that Mr. Galliher's recollection of his interactions with the Mendozas was pretty close to impeccable.  The Court further notes that based on the depths of his recollections, the Court finds Mr. Galliher to be an extremely credible witness.

**C.    Testimony of Deena Mooney**

25.    The Court also heard testimony of Deena Mooney, Keith Galliher's paralegal whom was also present at the October 17, 2014 meeting between Mr. Galliher and the Mendozas.

26.    Ms. Mooney testified that Mr. Galliher explained the fee limitations to the Mendozas, explained that Mr. Galliher would not take a medical malpractice case for the fee limitations stated in that agreement.

6

27.   Ms. Mooney further testified that Mr. Galliher was extremely "regimented" in his consultations and further would state the following every single time he on boarded a medical malpractice claim with the Galliher Law Firm:

> "He will tell them, let me talk to you a little bit about medical malpractice cases. Our legislature in their wisdom put on the ballot medical malpractice claims, and in doing that they kept attorney's fees at 25 percent. I will not take a case for 25 percent—a medical malpractice case for 25 percent, and I'm going to tell you why. These cases are very expensive to maintain, they're expert-intensive, you can expect to be into this case anywhere between 50 to a hundred thousand dollars before trial...."

28.   The Court notes again as to Ms. Mooney that her testimony is extreme precise and this is not surprising as she is a professional whom does this for a living. On this basis the Court finds the testimony of Ms. Mooney extremely credible.

**D.    Testimony of Eric and Michelle Mendoza**

29.   The Court, however, notes that it is tasked with weighing the testimony of Mr. Galliher and Ms. Mooney with the testimony of the Mendozas whose sole singular concerning is obtained the best result for Charlie.

30.   Mr. Mendoza at the outset of the hearing believed he had only met with the Galliher Law Firm once in October 2014, yet then later on under Cross-examination stated he may have met with the Galliher Law Firm a second time prior in September 2014.

31.   Contrast this with Ms. Mendoza whom testified that she had met with the Galliher Law Firm in September 2014 yet could not clearly recall the second meeting in October, 2014.

32.   Neither of the Mendozas recall any form of discussion as to any form of fee limitation for attorney's fees in Medical Malpractice cases in Nevada however this is not surprising as discussed below.

7

33.  The Mendozas were having an extremely chaotic and difficult time in their lives. The Mendozas had a son whom was in ICU at a hospital for nearly two months and then had to go through extremely difficult rehabilitation. The Mendozas also testified that they were going through a divorce at this exact same time. Finally, in combination with all of the above the Mendozas initiated an extremely contested medical malpractice lawsuit to obtain the best possible result for Charlie.

34.  On this basis and in light of all of this, the Court notes that it would not be entirely surprising that the Mendozas would be focused more so on their potentially terminally ill child, which was complicated by a divorce, than on the specific contents of Mr. Galliher's representations concerning the medical malpractice attorney's fee limitation at the time they signed a retainer agreement with the Galliher Law Firm agreeing to a 40% contingency fee in the event a lawsuit was filed.

**E.    The Retainer Agreement**

35.  The Court notes however that it is undisputed that the Mendozas executed a retainer agreement with the Galliher Law Firm, which contains the following provisions below.

36.  The retainer agreement that the Mendozas executed with the Galliher Law Firm specifically has the following relevant provisions:

"Attorney shall receive for such profession services THIRTY THREE AND ONE THIRD PERCENT 33 1/3% OF THE GROSS RECOVERY (REGARDLESS OF THE MANNER OR FORM) HEREAFTER, IF SETTLES WITHOUT FILING SUIT OR DEMAND FOR ARBITRATION, OR FORTY PERCENT (40%) THEREOF IF SETTLED OR RESOLVED AFTER SUIT OR DEMAND FOR ARBITRATION IS FILED"

37.  The retainer agreement also additionally states:

"This fee is not set by law, but is subject to negotiation between Attorney and Client, and could under law be higher or lower should the parties not have agreed to the percentages stated herein."

8

38. In light of the foregoing testimony and witnesses discussed above, the Court hereby makes the following conclusions of law below.

39. The Mendozas, however, do not dispute that 40% is a reasonable fee or that the fee was not earned.

## II.
## CONCLUSIONS OF LAW

1. As outlined in greater depth below, this Court finds that the Mendozas had knowledge of the attorney fee limitation in medical malpractice cases and by executing the retainer agreement with the Galliher Law Firm they knowingly, voluntarily, and intelligently waived the fee limitations under NRS §7.095.

2. In Nevada waiver is the voluntary and intentional relinquishment of a known right. *Udevco Inc v. Wagner* 100 Nev. 185 (1984).

3. Waiver requires an existing right, knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *McKeeman v. General Am. Life Ins. Co* 111 Nev. 1042 (1995).

4. A knowing and intelligent waiver can be performed via a written instrument or orally. *Mubarek v. State* 2017 Nev.App.Unpub. LEXIS 834 (2017).

5. A waiver of a right can also be implied through conduct when a party knowingly acquiesces to existing condition. *Building & Constr. Trades v. Public Works* 108 Nev. 605 (1992).

6. There are two ways to implicitly waive a right. First, conduct that evidences an intention to waive a right will function as an implied waiver. *Mahban v. MGM Grand Hotels* 100 Nev. 593 (1984). Second conduct that is inconsistent with any other intention than to waive a right will also function as a waiver. *Id.*

7. Waiver can be additionally implied by accepting performance when a party has all of the facts constituting the basis for waiver available to them. *Udevco* 100 Nev. at 7, *Gottwals v. Rencher* 60 Nev. 47 (1940)

8.  The Court hereby find that the Mendozas were aware of and had knowledge of the attorney fee limitations contained in NRS §7.095 based on the testimony of Keith Galliher and Deena Mooney. While the Court is sympathetic to the plight of the Mendozas, given the chaos in their lives when they retained the Galliher Law Firm the Court finds Keith Galliher and Deena Mooney to be more credible as witnesses and believes that Nevada's fee limitation was explained to the Mendozas at the time they executed the Galliher Retainer Agreement.

9.  This Court also finds credible Mr. Galliher's testimony that it was his firm's custom and practice to explain Nevada's medical malpractice attorney fee limitation.

10. As such the Court finds that the Mendozas had knowledge of the existence of Charlie's rights concerning attorney's fee limitations in Medical Malpractice Cases.

11. Additionally, the Court finds that by executing the retainer with the Galliher law firm, the Mendozas voluntarily relinquished their rights and therefore agreed to a 40% contingency fee as well as any other fees contained in that agreement payable to Eglet Prince and the Galliher Law Firm.

12. As such, the Court concludes that the Mendozas knowingly, voluntarily, and intelligently waived the attorney's fee limitation in NRS §7.095 and therefore the attorney's for Charlie are entitled to a 40% contingency fee consistent with the retainer agreement.

/.../.../

/.../.../

/.../.../

**III.**
**ORDER**

The Court having heard the witnesses and reviewed the pleadings and having taken the matter under advisement IT IS HEREBY ORDERED that the amount of $600,000.00 (which is 40% of the total amount recovered) shall be paid to the attorneys and that the amount of $303,333.33 (which is the difference between the amount of attorney fees permitted by NRS §7.095 and the 40% attorney fee that was negotiated by the Petitioners) which this Court previously ruled was to be held in the trust account of EGLET PRINCE, shall be released and paid to the attorney's to the minor

**IT IS SO ORDERED**

DATED this **26** day of ~~January~~ FEB, 2019.

_____
DISTRICT COURT JUDGE

Respectfully Submitted by:

**EGLET PRINCE**

_____
DENNIS M. PRINCE, ESQ
Nevada Bar No. 5092
THOMAS N. BECKOM, ESQ
Nevada Bar No. 12554

Approved as to Form and Content:

**THE LAW OFFICES OF LAURA HUNT, PC**

_____
LAURA PAYNE HUNT, ESQ
Nevada Bar No. 4718

11

EXHIBIT 9

**From:** Brad Booke <brad.booke@lawbooke.com>
**Sent:** Thursday, September 21, 2023 5:06 PM
**To:** Micah Echols
**Subject:** Re: Jesse Castillo Fee Dispute
**Attachments:** 00-Foothills Bank wire instructions.pdf

Micah:

I'm glad we're making progress. Please find attached wire instructions for Jesse Castillo's account for purposes of the interim distribution of proceeds. Please let me know when the wire transfer had been made so that we can look for it. Also, please provide documentary evidence of payment of the AHCCS lien and the outstanding loan.

My question concerning signatures on fee agreements may not have been clear. What I was looking for were the dates and times of the <u>attorneys'</u> signatures on any documents that are claimed to comprise fee agreements. Please provide same.

We will immediately begin review of the cost documents and provide a further response.

Thank you.

-----
Bradley L. Booke
Law Office of Bradley L. Booke
10161 Park Run Drive #150
Las Vegas, Nevada 89145
---and---
Box 13160 *(U.S. Mail)*
250 Veronica Lane #204 *(Courier)*
Jackson, Wyoming 83002

1

702-241-1631
866-297-4863 Fax
brad.booke@lawbooke.com

**From:** Micah Echols <Micah@claggettlaw.com>
**Date:** Thursday, September 21, 2023 at 6:33 PM
**To:** Brad Booke <brad.booke@lawbooke.com>
**Subject:** RE: Jesse Castillo Fee Dispute

Here is the response to your email sent on 9/19.

Regarding your request for the "date and time each signature was placed on each document," you should speak with your client. As you can see from the attached, Mr. Castillo signed the Fee Agreement with Battle Born on October 8, 2022 – after the Court had permitted the general negligence cause of action to be asserted. The original document is in his possession, not my clients'. The Addendum was electronically signed on October 5, 2022 at 11:45:59 PM per the attached AdobeSign verification. As you are aware, my clients have offered to resolve this dispute for the 40% fee noted in this document. However, Mr. Burk's fee arrangement of 45% is equally controlling, and will be pursued by my clients if this matter is submitted to the court (a difference of $65,000). Mr. Castillo signed Mr. Burk's Retainer electronically on April 16, 2020 at 4:26:01 PM, as indicated by the attached verification.

As it pertains to Mr. Castillo's proposed "interim step," my clients will agree to wire $360,000 immediately to Mr. Castillo upon receipt of wiring instructions, or alternatively can have a check mailed upon receipt of mailing instructions. Please indicate Mr. Castillo's preference. Simultaneously, my clients will disburse $360,000 from the trust account to Battle Born and Mr. Burk for partial payment of attorney fees. My clients will not apply this payment to costs, or stop accruing interest on costs, as you have indicated those costs are in dispute. Payment will also immediately be made for AHCCS lien in the amount of $20,551.00 and to Preferred Capital Funding in the amount of $3,735.00 as indicated on the proposed Closing Statement (attached).

In order to alleviate your concerns regarding costs, my clients have gone through the painstaking task of assembling all the backup for each and every cost incurred. The document is much too large to email, but can be viewed and downloaded here: https://acrobat.adobe.com/link/track?uri=urn:aaid:scds:US:8129ec07-235b-32ab-abec-6c3eb157f254.

I have also attached copies of the two settlement checks received in the case.

2

My clients are confident the documentation will prove satisfactory. If not to Mr. Castillo, then to the Court. We have yet to receive a response to my clients' entitlements. It is quite straightforward, and we are confident in bringing this claim before the Court. As you know, my clients have offered to resolve this dispute for a 40% instead of 45%. If my clients are forced to interplead the disputed amount, they will claim 45% in fees, the full costs plus interest accruing, and attorney fees and costs in the enforcement action. This will likely result in significantly less funds distributed to Mr. Castillo. Please note that it will be Mr. Castillo's burden to demonstrate why the contracted fee should not be paid. So, he will have to address both the professional corporations issue, as well as the ordinary / general negligence issue.

My clients represented Mr. Castillo will diligence and the utmost competency. While they appreciate the proposal for an interim solution, it will not delay my clients' action to enforce the terms that Mr. Castillo agreed to less than a year ago. If Mr. Castillo does not agree to the proposed Closing Statement in ten days, my clients will move forward with the interpleader.

Micah Echols, Esq.
Partner, Appellate Division



4101 Meadows Lane, Ste. 100 Las Vegas, NV 89107
100 N. Sierra St., Ste. 220 Reno, NV 89501
Ph. (702) 333-7777 – Las Vegas
Fax (702) 655-3763
www.claggettlaw.com

Connect with us on social media:





3

If you have received this communication in error, please call us immediately at (702) 655-2346 and ask to speak to the sender of the communication. Also, please email the sender and notify the sender immediately that you have received the communication in error. Finally, if you have received this communication in error and you have already notified the sender that you received it in error, please delete the email.

4

EXHIBIT 10

**MEMO**
JOHN F. BEMIS, ESQ.
Nevada Bar No. 009509
ATKINSON WATKINS & HOFFMANN, LLP
10789 W. Twain Ave., Suite 100
Las Vegas, NV 89135
Telephone: 702-562-6000
Facsimile: 702-562-6066
Email: jbemis@awhlawyers.com

CHRISTOPHER D. BURK, ESQ.
Nevada Bar No. 8976
BURK INJURY LAWYERS
2350 West Charleston Blvd., Suite 202
Las Vegas, NV 89102
Telephone: 702-901-0889
Facsimile: 702-623-5113
Email: chris@bettercallburk.com
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| JESSE CASTILLO, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES SHIN LIN, MD, individually;<br>RAZMIG GARO KRATLIAN, MD,<br>individually; ABRILL M. JONES, MD,<br>individually; JAMES S. FORAGE, MD,<br>individually; INPATIENT CONSULTANTS<br>OF NEVADA, INC.; FREMONT<br>EMERGENCY SERVICES, LTD.; SUNRISE<br>HOSPITAL AND MEDICAL CENTER, LLC<br>d/b/a SUNRISE HOSPITAL AND MEDICAL<br>CENTER; DUKE FORAGE ANSON<br>NEUROSURGICAL, LLP; and DOES I through<br>X, inclusive; and ROE CORPORATIONS I<br>through X, inclusive,<br><br>    Defendants. | CASE NO.:   A-20-820371-C<br>DEPT. NO.:  IX<br><br><u>**VERFIFIED MEMORANDUM OF COSTS<br>AND DISBURSEMENTS**</u> |

. . .

. . .

. . .

## VERIFIED MEMORANDUM OF COSTS AND DISBURSEMENTS

| Description | Amount |
|---|---|
| Soft Costs | $500.00 |
| Interest: | $14,857.79 |
| Advocate Capital, Inc.: | $4,246.55 |
| Burk Injury Lawyers Case Setup: | $200.00 |
| Service Fees: | $1,203.15 |
| Expert Fees: | $163,864.14 |
| Filing Fees: | $435.60 |
| Depositions Fee: | $21,537.37 |
| Document Retrievals/Copies: | $1,237.06 |
| Mediation Fees: | $1,075.00 |
| Run Deliveries: | $88.20 |
| Cost Bond: | $100.00 |
| **Total Case Expenses:** | **$209,344.85** |

1
2

**<u>DECLARATION OF JOHN F. BEMIS, ESQ., IN SUPPORT OF THE MEMORANDUM<br>OF COSTS</u>**

3

JOHN F. BEMIS, ESQ., being first duly sworn, declares and states:

4
5

1.      I am the attorney for Plaintiff JESSE CASTILLO and have personal knowledge of the above costs expended herein.

6
7

2.      The items contained in the above memorandum and attached herein are true and correct to the best of Declarant's knowledge and belief.

8
9

3.      The above-listed costs have been necessarily incurred and paid in this action.

I declare under penalty of perjury that the foregoing is true and correct.

10

EXECUTED this  12th day of October, 2023.

11

ATKINSON WATKINS & HOFFMANN, LLP

12
13

*/s/ John F. Bemis, Esq.*
JOHN F. BEMIS, ESQ.

14

Nevada Bar No. 9509
10789 W. Twain Avenue, Suite 100

15

Las Vegas, NV 89135
*Attorneys for Plaintiff*

16
17
18
19
20
21
22
23
24
25
26
27
28

- 3 -